Argued April 17; affirmed July 9; costs taxed July 30, 1935

# DENLEY *v.* OREGON AUTOMOBILE INSURANCE CO.

(47 P. (2d) 245, 47 P. (2d) 946)

*W. H. Maguire,* of Portland (Dey, Hampson & Nelson and R. R. Morris, all of Portland, on the brief), for appellant.

*Glenn R. Jack,* of Oregon City, and *Eugene Marsh,* of McMinnville (Vinton & Marsh, of McMinnville, and Butler & Jack, of Oregon City, on the brief), for respondent.

BAILEY, J.   The plaintiff, Richard Denley, instituted this action to recover from the defendant, Oregon Automobile Insurance Company, a corporation, the sum of $5,107.45, with interest thereon at the rate of six per cent per annum from September 22, 1933, and the further sum of $500, attorneys' fees.   The action is based on a policy of casualty insurance issued by the defendant corporation to the county of Yamhill, on a Pontiac automobile.   The sum prayed for in the complaint, less attorneys' fees, is the amount of a judgment recovered by this plaintiff against R. J. Kennedy, county judge of Yamhill county, for damages suffered by plaintiff in an automobile collision in which the said Kennedy was operating the Pontiac car covered by such insurance.

Plaintiff bases his right to recover against the defendant on the ground that R. J. Kennedy, at the time the accident occurred, was a legal representative of Yamhill county and engaged in county business; that the insurance policy protected the county and its legal representative against direct loss or damage resulting from accidents involving such legal representatives; that the judgment which he had recovered against Kennedy had not been paid; and that under the provisions of the policy he was given a right of action against the insurance company for the amount of such judgment.

The defendant in its answer set forth two defenses: (1) that R. J. Kennedy and the board of county commissioners of Yamhill county did not render to the company "all cooperation and assistance" within their power in securing information and evidence in the defense of the action brought by Denley against Kennedy, and that they had concealed or misrepresented material facts relating to such accident; and (2) that the coverage on the automobile was limited to it while being operated on the business of Yamhill county.

At the trial it was stipulated that plaintiff had recovered judgment in the sum of $5,107.45 in his action against R. J. Kennedy, and the evidence is undisputed that this judgment had not been paid. It was further admitted that R. J. Kennedy was, at the time of the accident, county judge of Yamhill county, Oregon. Evidence was introduced to the effect that at the time of the accident no health nurse was in the employ of the county.

The accident out of which this damage action arose occurred on July 6, 1933, in Clackamas county, Oregon. At that time Judge Kennedy was on his way to Oregon City, having with him in the Pontiac automobile Mrs. Verna Hagerty and her 4-year-old daughter. Mrs. Hagerty lived at Carlton, Yamhill county, and was receiving aid from that county. She was trying to find work, had received information that employment might be had at Oregon City which would include a home for herself and one of her children, and had requested Judge Kennedy to furnish transportation to Oregon City for her.

After stopping at Carlton for Mrs. Hagerty and her child, Judge Kennedy proceeded to Rex, in Yamhill county, to call on the Wilder family. A daughter of this family, Mrs. Edwards, with her three children

had been living with the Wilders. Mrs. Edwards was receiving a widow's pension and Judge Kennedy's purpose in stopping to see her was to discuss having the Salvation Army Home take care of the Edwards children, to enable her to obtain employment. When he reached the Wilder home he found that Mrs. Edwards was absent, but he did discuss the matter with her mother.

He then proceeded to Oregon City, but within about six miles of that place the accident occurred. Judge Kennedy immediately notified the agent of the insurance company about the accident.

A few days thereafter complaint and summons were served on Judge Kennedy in an action brought by plaintiff against him. The complaint and summons were sent to the insurance company, together with a report filled out on blank furnished by the insurance company. Later the attorney-adjuster for the insurance company called on Judge Kennedy at McMinnville and obtained from him a signed, six-page, typewritten report concerning the accident.

The last paragraph of this report contained a statement that Judge Kennedy was, at the time of the accident, not engaged in county business but on business of his own. He later contended that he had not carefully read the entire statement and that when he discovered the notation as to the nature of the errand on which he was engaged when the collision occurred he notified the insurance company of the error and furnished the company another report, in which he stated that he was on official business at the time of the accident.

Considerable correspondence was had between Judge Kennedy and the attorneys for the insurance company. During this time the attorney-adjuster and

one of the regular attorneys for the insurance company called upon Judge Kennedy in his office at McMinnville, brought in the court reporter for that judicial district and wanted to have the reporter make a complete report of his interrogation concerning the business on which he was engaged at the time of the accident, to determine whether it was official or not. Judge Kennedy on the advice of his attorneys refused to undergo any such examination if it were to be taken down and transcribed, but did consent to answer any questions which might be put to him otherwise. He and his attorneys agreed, in addition, to furnish affidavits on any subject which might be requested by the insurance company. Question was not raised, then or at any later time, as to the giving of information by Judge Kennedy or the rendering of any other assistance in his power other than to comply with the request that he be examined before the court reporter as to the nature of the business in which he was engaged when the collision occurred.

The cause was tried to the court and a jury and the jury returned a general verdict in the sum of $5,107.45. It also answered, in the affirmative, the following interrogatories: (1) Was the Pontiac automobile driven by R. J. Kennedy at the time and place of the accident being used on the business of Yamhill county? (2) Was the automobile driven by Mr. Kennedy at the time and place of the accident being used in the business of the health nurse of Yamhill county? Judgment was rendered on the verdict, and the defendant appeals.

In its reply brief the appellant states: "The determination of the appeal has been narrowed to the answers to the questions: First: Did the policy issued by appellant cover the Pontiac automobile when

being driven by one other than the health nurse of Yamhill county? Second: Did R. J. Kennedy, the driver of the automobile claiming coverage under the insurance policy, fail to render the cooperation required by the terms of the policy?"

The policy of insurance on which this action is based is in part as follows:

"Oregon Automobile Insurance Company . . . in consideration of the warranties and the premiums hereinafter mentioned, does insure county of Yamhill, of McMinnville, Yamhill county, Oregon, and legal representatives, . . . against direct loss or damage from the perils insured against, as set forth herein and for which a premium is charged and coverage indicated in the following schedule: . . .

"D. Property Damage—Limit $5,000.

"E. Public Liability—Limits, 1 person $10,000; 1 accident, $20,000."

Under the heading "Warranties" are contained the following specifications:

"The following are statements of facts known to and warranted by the assured to be true, and this policy is issued by the company relying on the truth thereof:

"1. Assured's occupation or business is *Corporation.*

\* \* \* \* \*

"5. The automobile described will be used *By Health Nurse of Yamhill County.*

"6. The automobile described herein will not be used for: (a) carrying passengers for a consideration, or renting to others; (b) towing or propelling trailers or other vehicles used as trailers; (c) demonstrating or testing, nor in any work connected with a garage, repair shop, sales agency or service station, except as herein stated *No Exceptions.*

"7. The automobile described herein is principally used in *McMinnville, Oregon* and vicinity."

The matters in italics are the typewritten insertions.

On the third page, under the heading "General Conditions Relating to All Clauses and the Policy as a Whole", are, among others, the following paragraphs:

"9. The company shall not be liable under this policy for: (a) Accidents occurring while the automobile is being operated in any race or speed contest, or by any person in violation of law as to age or in any event under the age of fourteen years, or while for any purpose other than as specified herein; * * * (c) While the automobile described herein is used as a public or livery conveyance for carrying passengers for compensation, or while being rented under contract or leased; * * * (i) Accidents occurring while the automobiles described herein are being operated, used or maintained beyond the limits of the United States of America, and Canada.

"10. * * * Whenever requested by the company the assured shall aid in securing information, evidence, and the attendance of witnesses, in effecting settlements, and in prosecuting appeals. The assured shall at all times render to the company all cooperation and assistance within his power, except in a pecuniary way. * * *

"11. Additional Assured. The insurance granted by clauses D and E shall apply to any person while riding in or legally operating any automobile described in the schedule of warranties, with the permission of the assured or of any adult member of assured's household other than a chauffeur or domestic servant, also to any person, firm or corporation (except an automobile repair shop, garage, automobile sales agency or service station and the agents and employees thereof) for whom said automobile is being operated (which said person, firm or corporation shall be known hereunder as 'Additional Assured') in the same manner and under the same conditions as to the Assured; provided that any Additional Assured who is covered by valid and collectible insurance against a claim also covered hereby shall have no right of recovery under this policy. The insurance hereby granted to such Additional Assured shall be subject to all the conditions and declara-

tions of this policy, and said conditions and declarations shall apply to and be binding upon Additional Assured in the same manner and to the same extent as to and upon the Assured. If an automobile covered by this policy is sold or transferred, the indemnity provided herein shall not extend to such purchaser or transferee, unless the interest in the policy is assigned in accordance with all the conditions relating to the manner of such transfer.

"12. Bankruptcy or insolvency of the assured shall not relieve the company of any of its obligations hereunder. If any person or his legal representatives shall obtain final judgment against the Assured because of any such injuries, and execution thereon is returned unsatisfied by reason of bankruptcy, insolvency or any other cause, or if such judgment is not satisfied within thirty days after it is rendered, then such person or his legal representatives may proceed against the company to recover the amount of such judgment, either at law or in equity, but not exceeding the limit of this policy applicable thereto.

\* \* \* \* \*

"15. Misrepresentations and Fraud. This entire policy shall be void if the assured or his agent has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof; or in case of any fraud, attempted fraud, or false swearing by the assured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

In support of its contention that under the fifth paragraph of the warranties it is liable only in such cases as when the automobile covered by the insurance is being used by the health nurse of Yamhill county, the appellant has cited a number of authorities. These we shall briefly review.

In *Elder v. Federal Insurance Co.*, 213 Mass. 389 (100 N. E. 655), the insurance policy "warranted that the automobile hereby insured" against loss or damage

by fire "shall not be used for carrying passengers during the term of this policy, and in the event of the violation of this warranty, this policy shall immediately become null and void". A son of the assured used the car, for compensation, to make "trips for the accommodation of tourists and passengers", and the court there held that such use of the automobile voided the policy.

*Peterson v. Universal Insurance Company*, 53 Idaho 11 (20 P. (2d) 1016), involved an insurance policy which contained a provision that the automobile described therein "is and will be used only for private pleasure". It was there held that the use of the automobile for business purposes constituted a breach of the liability policy limiting the use of the automobile to pleasure purposes only, and denied recovery of indemnity from the insurer.

In *Mittet v. Home Insurance Company*, 49 S. D. 319 (207 N. W. 49), action was brought for the value of a car lost by theft. The policy of insurance provided that "if the automobile described herein shall be used for carrying passengers for compensation, or rented, or leased . . . during the term of this policy", the contract of insurance should be null and void. The son of the insured took the car for the purpose of transporting a passenger to a distant town, and while he was out of the car the passenger stole it. The court held that under the provision of the policy above quoted no recovery could be had.

*Drewek v. Milwaukee Automobile Insurance Company*, 207 Wis. 445 (240 N. W. 881), concerned a policy in which the assured represented that their occupation was that of grocers and that "the above described automobile is used only for commercial purposes in business of the assured". The policy contained the provision

also that the insurance company would not be liable for any loss or damage "while any automobile insured herein is used . . . for any purpose not specified". At the time of the casualty an employee of the assured was using the truck after his regular working hours to "haul furniture at the request of his friend, Drewek, for a friend of the latter". Recovery against the insurance company was denied on the ground that the policy limited the use of the car to commercial purposes in business of the assured and that the employee of the assured was not so operating the automobile at the time of the accident.

The supreme court of the United States in *Imperial Fire Insurance Company v. Coos County*, 151 U. S. 452 (14 S. Ct. 379, 38 L. Ed. 231), denied recovery on a fire insurance policy which contained a condition that the "policy shall be void and of no effect if, without notice to this company and permission therefor in writing endorsed hereon, . . . the premises shall be used or occupied so as to increase the risk . . . or the risk be increased by any means within the knowledge or control of the assured . . . or if mechanics are employed in building, altering or repairing premises named herein". Without written consent of the insurance company and without its knowledge the assured did employ mechanics.

*Lucas v. Mueller*, 183 Wis. 529 (198 N. W. 286), had to do with a policy which contained this stipulation: "The car will be used for pleasure only, owner driving." It was further stated in the policy: "The insured should be very careful not to deviate from the stated use because the occurrence of an accident while doing so is clearly not under the indemnity." At the time of the injury complained of the car was being operated by another driver, and the court held that the

limitation expressed in the policy precluded recovery, inasmuch as the car was being driven by one other than the owner at the time of the accident.

In *Enders v. Clarke,* 43 Ohio App. 253 (183 N. E. 83), the motor vehicle was, at the time the accident occurred, being driven by one Stanley Bailey, rather than the customer who rented it. The contract of rental provided that the customer agreed not to permit the automobile to be driven by another, except his servant or employee while acting for him in the due course of his business, and that the indemnity provided by the owner should not inure to the benefit of the customer during any time when any of the provisions, conditions and stipulations of the contract were being violated ''by the customer or his servants or employees acting for him''. The trial court found that Bailey was in the service of Enders when the accident occurred, and gave judgment for Clarke, the injured plaintiff. When the judgment remained unsatisfied and action was brought against the insurance company the Ohio court of appeals held that the judgment in the original case was *res judicata* of the issue ''that Bailey was in the *service* of Enders at the time'', and affirmed judgment in favor of Clarke, the original plaintiff, and against the insurance company. Recovery was not denied, as indicated in appellant's brief.

*Orient Insurance Company v. Van Zandt-Bruce Drug Company,* 50 Okl. 558 (151 P. 323), is an instance of denial of recovery because of the carrying of passengers for compensation contrary to the express provisions of the policy of insurance.

In *Snyder v. National Union Indemnity Company,* 65 Fed. (2d) 844, it was expressly stipulated that the truck there involved should be used only in the business of Sam Holland, insured, as a merchant, including load-

ing and unloading and incidental pleasure use by the family of the assured, "no exceptions". At the time the Snyder child received his injuries he was riding on the truck owned by Holland and driven by the child's father, who had not had permission from the assured to operate the truck. The court held that the injured child was not a member of the family of the assured and that the insurance did not cover the use of the truck to which it was being put at the time of the accident.

In *Wood v. American Automobile Insurance Company,* 109 Kans. 801 (202 P. 82), action on a policy against loss of an automobile by theft was brought to recover the value of a car stolen. The insurance policy provided that any change in the ownership or interest of the assured or the use of the automobile for transporation of passengers for hire would immediately terminate the policy. The court found that there had been a change of ownership of the automobile and that the car was being used for transportation of passengers for hire. Recovery was therefore denied.

In addition to the foregoing cases the appellant has cited Vance on Insurance (2d Ed.), pp. 387 and 392; Richards on Insurance (4th Ed.), pp. 143 and 147. Many of the decisions relied upon by appellant were cases in which the policy of insurance provided that for violation of certain clauses therein the insurance would be terminated or rendered void. Others involved policies which provided expressly that the automobile should be used for certain definite purposes and none other.

In the case at bar it is necessary to construe the entire policy of insurance to determine whether or not the insurance on the car was limited to the period of its use by the health nurse exclusively. The policy does not state that the car shall be used only by the health nurse.

The sixth paragraph of the warranties, however, expressly provides that the car shall not be used for certain designated purposes. There is no contention that the automobile had been, or was at the time of the accident being, used contrary to the prohibition contained in this latter paragraph.

Under the "additional assured" clause of the policy, paragraph 11 above quoted, it is expressly provided that the coverage shall include any person while riding in or legally operating the automobile with the permission of the assured. We have the further fact that the policy insures Yamhill county "and legal representatives". Judge Kennedy was, at the time of the accident, an officer of the county and its legal representative.

■ It is contended by the appellant that if any effect whatever be given the "additional assured" clause, it would render meaningless the clause in the policy relating to the health nurse, and that full effect can not be given to both of these provisions. It is true that the construction of the policy urged by appellant, to wit, that the use of the car is limited solely to the health nurse, can not be given effect unless the "additional assured" clause be entirely ignored. The Pontiac car was, as the testimony shows, being used principally by the health nurse at the time the policy was written, and had it been the intention of the parties to limit recovery to such use only, more apt and definite wording would undoubtedly have been employed. When the entire policy of insurance is construed, as indeed it must be, it is obvious that the interpretation contended for by the appellant is too narrow, and that the policy does cover use of the insured car by the legal representatives of Yamhill county, of whom Judge Kennedy was one. That he was, at the time of the mishap, engaged in the

performance of his official duties has been affirmatively decided by the jury's verdict.

In the following cases the court in construing a policy of insurance gave effect to conditions similar to the above "additional assured" clause: *Dickinson v. Maryland Casualty Company,* 101 Conn. 369 (125 Atl. 866, 41 A. L. R. 500); *Maryland Casualty Company v. Ronan,* 37 Fed. (2d) 449 (72 A. L. R. 1360); *Odden v. Union Indemnity Company,* 156 Wash. 10 (286 P. 59, 72 A. L. R. 1363); *Stovall v. New York Indemnity Company,* 157 Tenn. 301 (8 S. W. (2d) 473, 72 A. L. R. 1368). All these cases have placed a liberal construction on policies containing such clauses. The authorities cited by the appellant are not directly in point on the question here at bar and construe provisions of insurance policies differing materially from the policy before us. Few, if any, of such cases contain the "additional assured" clause in the policy involved.

We have also the practical construction placed on this policy by the insurance company itself. In all the correspondence between Judge Kennedy and the company no contention was made by the company or its attorneys that the policy limited the use of the automobile to that by the health nurse. In their numerous letters to Judge Kennedy, the attorneys for the company were insisting that their client was not liable, because, as they asserted, Judge Kennedy had not been engaged in official business when the collision occurred. The defense that the use of the automobile was, under the provisions of the policy, limited to the health nurse, appears to have been relied upon by the insurance company for the first time after the institution of this action.

The insurance policy involved in this litigation also contained a provision relating to bankruptcy or in-

solvency of the assured, which was inserted in order to protect persons injured by the insured automobile. See, in this connection, *Dickinson v. Maryland Casualty Company*, supra, and *Stovall v. New York Indemnity Company*, supra. Section 46-143, Oregon Code 1930, requires the inclusion of such a provision in all insurance policies of this kind. The purpose of the legislature in passing this law undoubtedly was to afford as full protection as possible against damage caused by motor vehicles.

■ The other question raised by appellant has to do with whether or not Judge Kennedy failed to furnish to the insurance company the information required of him under the provisions of the policy relating to reporting any accident. This question was submitted to the jury under proper instructions and it found against the appellant's contention. There is not even a suggestion on the part of appellant that Judge Kennedy failed in any particular to furnish all the information he had, or could obtain, relative to the accident in which plaintiff was injured. The basis of the charge is that he would not consent to be questioned by the attorneys for the company before the court reporter concerning the capacity in which he had been using the automobile. We can not say as a matter of law that the refusal of Judge Kennedy to submit to an inquisitorial examination at the hands of the attorneys for the insurance company as to whether he was operating the car on his own private business or on county business, under the facts in the case, was a breach of the terms of the insurance policy. In the case of *Allegretto v. Oregon Automobile Insurance Company,* 140 Or. 538 (13 P. (2d) 647), cited by appellant on this point, the assured falsely represented that one Akre was driving the automobile at the time of the accident, while as a matter of fact it was

being driven by the insured himself. The answer was first filed on the assumption that Akre was the driver of the automobile when the casualty occurred. Later, an amended answer was filed showing the true facts. This court held that according to the evidence in the case there had been false swearing, which relieved the insurance company from liability.

As we find no error in the record before us, the judgment appealed from is affirmed.

CAMPBELL, C. J., not sitting.

———

Motion for allowance of attorneys' fees granted July 30, 1935

ON MOTION FOR ATTORNEYS' FEES
(47 P. (2d) 946)

BAILEY, J. The respondent, Richard Denley, having prevailed on appeal, files a motion for the allowance of attorneys' fees in this court, on the authority of § 46-134, Oregon Code 1930, as amended by chapter 355, Oregon Laws, 1931.

■ The action was brought on a policy of casualty insurance. In the circuit court this litigant was allowed $400 attorneys' fees. The only objection made to the allowance of attorneys' fees here is that the appellant "has been informed that the attorneys for the plaintiff-respondent undertook the prosecution of the action" upon a contingent fee entitling respondent's attorneys to a certain percentage of any money recovered in the action.

The respondent is entitled to the allowance of attorneys' fees in this court unless the objection by the appellant is well taken: *Christensen, Inc., v. Hansen Construction Company,* 142 Or. 549 (21 P. (2d) 195); *Spicer v. Benefit Association of Railway Employees,* 142 Or.

574 (17 P. (2d) 1107, 21 P. (2d) 187, 90 A. L. R. 517). Our attention has not been called to any statute or decision to the effect that a litigant may not be awarded attorney's fees in a case of this nature, which was prosecuted on a contingent fee. We see no merit in the objection.

On all the facts before us, we are of opinion that $300 is a reasonable amount to be allowed respondent as attorneys' fees in this court, and that sum is therefore allowed.

BELT, J., not participating.