Argued January 7; affirmed February 16; motion for allowance of attorney's fee denied March 30; further motion on attorney's fee denied May 11, 1937

## DAVIS *v.* STATE INDUSTRIAL ACCIDENT COMMISSION

(64 P. (2d) 1330, 66 P. (2d) 279, 68 P. (2d) 118)

*Victor R. Griggs,* Assistant Attorney General (I. H. Van Winkle, Attorney General, on the brief), for appellant.

*Walter McGuirk,* of Portland (McGuirk & Schneider, of Portland, on the brief), for respondent.

ROSSMAN, J. The sole issue presented by this appeal concerns the status of the deceased, Norman Edward Davis, at the time of his fatal injury, October 19, 1934. Respondent, the widow, contends that her husband, at the time of his death, was an employee of a partnership known as Buck Bros. The appellant, to which we shall refer as the defendant, insists that, although the deceased was working for Buck Bros., the provisions of 1933 Session Laws, page 113, chapter 116, section 2, demand a conclusion that in the contemplation of that enactment the deceased was working for himself. Section 2 is as follows:

"The term 'employer,' used in this act, shall be taken to mean any person, firm or corporation, including receiver, administrator, executor or trustee, who shall contract for and secure the right to direct and control the services of any person, and the term 'workman' shall be taken to mean any person, male or female, who shall engage to furnish his or her services, subject to the direction or control of any employer; provided, that for the purposes of this act only, when workmen, either associating themselves together under a partnership agreement or as individuals, enter into a contract, the principal purpose of which is the performance of the labor on a particular piece of work, such work to be performed by themselves or with the assistance of other workmen employed by them, all

such workmen shall be deemed employes of the persons having such work done, and not independent contractors. No person shall be deemed an independent contractor when the system of employment is merely a method of fixing wages and the workman performs work either with the employer's equipment, tools or appliances or under his direction.''

■■ The evidence is free from contradiction and discloses the following: At the time of his fatal injury, October 19, 1934, the deceased, who was 26 years old, was buying an interest in a sawmill which he and his father operated as partners under the firm name of Davis & Son. Apparently, the mill was a small outfit and young Davis worked in it as a sawyer. According to his father, the son ''took odd jobs when the mill was shut down. * * * He worked for Simmons, three or four times, and he worked for Buck twice.'' In the vicinity of the mill was a stand of timber owned by one Butler. Davis & Son had a contract with Butler which enabled them to cut this timber. They also had a contract with Buck Bros., which was composed of Bill and Tom Buck, whereby the Bucks, in consideration of $2.80 per thousand feet, bound themselves to fell the trees, trim them into saw logs and transport the logs to the mill. The contract required the Bucks to furnish the necessary crew of men and all of the equipment needed for the performance of this undertaking. Besides the two Bucks, only one of whom gave his full time to this task, the firm employed a crew of six men and used a tractor, two teams of horses, cables, axes, shovels, etc., in executing this contract. The contract gave Davis & Son no control over Buck Bros.' employees, equipment, methods, etc. Buck Bros. were at liberty to select any employees they desired and choose any methods which they preferred. Buck Bros. had no interest in the mill.

Their right to compensation accrued when sound logs reached the mill. The tractor pulled the logs from the place where they had been bucked to the course leading to the mill from whence they were moved by the teams the remainder of the distance.

By the middle of October, 1934, Buck Bros., who had worked upon this contract for about six weeks, were delivering an insufficient supply of logs to the mill, with the result that the mill was forced to suspend its operations. Bill Buck, who was the manager of the operations, believed that one Virgil Ashoff, who operated the tractor, was incapable and that he was responsible for the unsatisfactory conditions. Young Davis was familiar with tractors and was idle due to the shutdown. Bill Buck now sought him out and urged him to assume charge of the tractor. Davis demurred because he did not like to displace Ashoff; nevertheless, as a result of Buck's insistance, he accepted the employment. The terms of the arrangement which the two men effected are not disclosed by the evidence because Buck did not testify, but two witnesses who overheard a part of the conversation swore that Buck hired Davis to operate the tractor and at the same time terminated Ashoff's employment. Davis promptly went to work. One and one-half hours later, while he was operating the tractor, he met with the fatal accident.

The above are the facts. Without reviewing the numerous definitions of the terms "independent contractor" and "master and servant" which are readily available, we express our belief that, apart from the above statute, it is clear that Buck Bros. bore to Davis & Son the relationship of independent contractors. But the defendant insists that the above statute demands

a conclusion that the relationship of Buck Bros. to Davis & Son was that of servant to master, and that therefore young Davis was working for himself when he assumed control of the tractor. Since he had not availed himself of the privileges afforded by 1933 Session Laws, page 113, chapter 116, section 3, whereby an employer may obtain compensation under the act in the event of his injury, the defendant insists that Davis's widow is not entitled to compensation.

It will be observed that the enactment above quoted still retains the commonly accepted definition of the terms "employer", "workman" and "independent contractor", although it adds: "For the purposes of this act only, when workmen, either associating themselves together under a partnership agreement or as individuals, enter into a contract, the principal purpose of which is the performance of the labor on a particular piece of work such work to be performed by themselves or with the assistance of other workmen employed by them, all such workmen shall be deemed employees of the persons having such work done and not independent contractors." It is significant that this language is followed by a clause which states that a person shall not be deemed an independent contractor if his contract constitutes nothing more than "a method of fixing wages." The defendant concedes that the legislature passed this act to make clear the fact that station men engaged in highway construction are workmen within the contemplation of the compensation act. It is obvious that the arrangement effected between a contractor and his station men is merely a means of determining the latter's wages. The contractor and the station men are engaged in the same pursuit, that is, highway construction, but in the present instance Davis & Son were

not engaged in the same pursuit as that followed by Buck Bros. Hiram S. Davis, father of the deceased, very emphatically answered "Absolutely no" to the defendant's inquiry, "The mill and the operations conducted by Buck Bros. were all one logging operation?" To the next inquiry which was based upon a suggestion that the mill was using the logs brought in by Buck Bros., the father said, "Yes, but two different crews." In the present instance it is impossible to say that "the principal purpose" of the contract held by Buck Bros. was the performance of the labor on a particular piece of work" because one of the seven men who were performing the contract was operating the tractor, two more were handling the teams, while still another (Bill Buck) must have spent part of his time, at least, in supervising the operations. These operations besides involving the use of the expensive equipment already mentioned required fuel and oil for the tractor, as well as feed and care for the horses. A station man knows beforehand that his hard labor will yield nothing more than a wage computed in terms of the amount of material which he moves. He expects nothing on account of invested capital because he has none, and in most instances any other laborer who is willing to toil can get a job upon the same basis. Station men are not at liberty to select methods, but must do as they are bidden. But Buck Bros. held a contract which was available only to loggers. Manifestly, they expected to make a profit upon the work of each man whom they employed and upon their invested capital. In the event that the methods which they selected proved to be peculiarly effective they could expect that the $2.80 per thousand contract price would reward them accordingly.

Without proceeding further, we express the belief that the above enactment was not intended to alter the ordinary definitions of the terms "independent contractor" and "master and servant" except to authorize the courts in the administration of the Workmen's Compensation Act to regard as a workman any person who works for wages, even though the latter is not expressed in a definite sum but is fixed by the quantity of service rendered. That being true, we are satisfied that Buck Bros. were independent contractors.

■ We know of no provision of the law which rendered it impossible for young Davis, although a partner in the firm of Davis & Son, to accept temporarily employment with Buck Bros. The mill had shut down due to an emergency, and young Davis was idle. When Bill Buck urged the young man to replace Ashoff so that the logs would move to the mill with the required degree of dispatch, Hiram Davis, senior partner, was present and offered no objection. We believe that at the time of his fatal injury young Davis was an employee of Buck Bros.

The judgment of the circuit court is affirmed.

BEAN, C. J., and KELLY and RAND, JJ., concur.

---

Motion for allowance of attorney's fee denied March 30, 1937

ATTORNEY'S FEE

(66 P. (2d) 279)

ROSSMAN, J. This is a motion by the plaintiff-respondent for an order awarding to her attorneys, Messrs. McGuirk and Schneider, the sum of $250 as compensation for the services they performed during

the course of the appeal. The motion states that it is based upon (a) the record in this case; (b) the affidavit of Walter T. McGuirk; (c) 1933 Session Laws, Chap. 115 (§ 49-1843b, Oregon Code 1935 Supplement); and (d) "the analogous decision handed down by this court in the case of *Denley v. Oregon Automobile Insurance Agency,* 151 Or. 42 (47 Pac. (2d) 245, 946), and the cases therein cited." The affidavit of Mr. McGuirk merely describes the services which McGuirk and Schneider performed for the plaintiff during the course of the appeal, and expresses the opinion that the services are worth the sum of $250.

Section 49-1843 (b), Oregon Code 1935 Supplement (1933 Session Laws, Chap. 115), provides:

"No claim for legal services or for any other services rendered before the commission in respect to any claim or reward for compensation, to or on account of any person, shall be valid unless approved by the commission, or if proceedings on appeal from the order of the commission in respect to such claim or award are had before any court, unless approved by such court. In event an attorney and the commission can not agree upon the amount of the fee, each forthwith shall submit a written statement of the services rendered to the presiding judge of the circuit court in the county in which the claimant resides, which judge shall, in a summary manner, without the payment of filing, trial or court fees, determine the amount of such fee. Said controversy shall be given precedence over other proceedings. Any claim so approved shall, in the manner and to extent fixed by the commission or such court, be a lien upon such compensation."

That part of *Denley v. Oregon Automobile Insurance Company,* 151 Or. 42 (47 P. (2d) 245, 47 P. (2d) 946), which awarded the plaintiff an attorney fee, was based upon § 46-134, Oregon Code 1930, and the action

itself, as stated in the decision, was predicated upon "a policy of casualty insurance." The section of our laws just mentioned provides:

"Whenever any suit or action is brought in any court of this state upon any policy of insurance of any kind or nature whatsoever, including the policy or certificate issued by fraternal benefit societies as defined in' * * * the plaintiff, in addition to the amount which he may recover, shall also be allowed and shall recover, as part of said judgment such sum as the court or jury may adjudge to be reasonable as attorney's fees in said suit or action; provided, that settlement is not made within six months from the date proof of loss is filed with the company or society; provided further, that if a tender be made by a defendant in any such suit or action and the plaintiff's recovery shall not exceed the amount thereof, then no sum shall be recoverable as attorney's fees. * * *"

■ When Gertrude Davis, the plaintiff, instituted the present proceeding she possessed no policy of insurance, and the proceeding is not based upon such an instrument, but upon a statutory liability. We are well convinced that § 46-134, Oregon Code 1930, does not authorize the allowance of an attorney's fee in this proceeding.

■ Section 49-1843(b), Oregon Code 1935 Supplement, does not authorize the award of an attorney's fee to be paid in addition to the compensation allowed by the commission. Its last sentence, in referring to the attorney's fee, states: "Any claim so approved shall, in the manner and to extent fixed by the commission or such court, be a lien upon such compensation." The act, in our opinion, merely provides that (a) agreements between client and attorney concerning fees to be paid out of awards are invalid unless approved by the commission or by a judge, in the event the matter is pend-

ing before a court upon an appeal; (b) if the commission refuses to approve a fee requested by an attorney, the circuit court may settle the issue; and (c) an approved fee is a lien upon the awarded compensation.

We believe that the plaintiff filed the motion under the mistaken belief that § 46-134 authorizes the allowance of a fee in addition to the award of compensation for her husband's death, and not for the purpose of having the size of the fee determined. Since the fee is to be paid out of her allowance, she is entitled to be heard before its amount is determined. After she and her attorneys have agreed upon the amount of the fee, they may submit it for our approval. If they cannot agree, § 49-1843(b) outlines an expeditious method for the adjudgment of the dispute.

The motion is denied.

BEAN, C. J., and KELLY and RAND, JJ., concur.

---

Motion for approval of attorney's fee denied May 11, 1937

### ATTORNEY'S FEE
#### (68 P. (2d) 118)

■ ROSSMAN, J.  This is a motion by Messrs. McGuirk and Schneider, attorneys at law, for approval of their claim against the plaintiff in the sum of $250, compensation for services performed by them during the course of this appeal. Accompanying the motion is a letter, dated April 3, 1937, signed by the plaintiff, approving the claim. The motion is based upon 1933 Session Laws, chap. 115, p. 112, codified as § 49-1843b, Oregon Code 1935 Supplement. In a letter, dated April 13, 1937, the plaintiff states that she signed the letter of approval through misunderstanding which she fully explains, and that, since the attorneys were awarded

a fee for $500 for their services in the circuit court, she deems a further award of $250 excessive. She asks that her approval be deemed withdrawn. In another letter, also dated April 13, 1937, she repeats her objections to the allowance of the fee and again manifests her disapproval.

The motion of the attorneys is predicated upon an assumption that the fee for which they have asked approval is satisfactory to their client. Since the plaintiff has manifested dissatisfaction and has accompanied her expression of the latter with reasons, we do not believe that the statute upon which the attorneys rely authorizes approval.

■ In our opinion, dated March 30, 1937, concerning another phase of this matter, we set forth a copy of the statute upon which the attorneys rely, and then stated, ''After she and her attorneys have agreed upon the amount of the fee they may submit it for our approval. If they cannot agree, § 49-1843(b) outlines an expeditious method for the adjustment of the dispute.'' The statute is inartfully drawn. We have examined it again and have arrived at the conclusion that it confers authority upon the commission and the courts to approve fees only after client and attorney have agreed upon the amount. We have become convinced that it confers no authority upon the commission nor the courts to do anything about fees, in the absence of an agreement between client and attorney in regard thereto. If a dispute arises between the attorney and the commission concerning the approval of the fee, then the court may adjust the dispute after the parties to it have submitted statements.

It follows from the above that the motion must be denied.

BEAN, C. J., and KELLY and RAND, JJ., concur.