121 So.2d 470 (1960)
Fred S. BALL, Appellant,
v.
INLAND MUTUAL INSURANCE CO., Huntington, West Virginia, Appellee.
No. 59-51.
District Court of Appeal of Florida. Third District.
June 2, 1960.
Rehearing Denied June 21, 1960.
Headley, Mosca & Sudduth, Miami, for appellant.
Morehead, Forrest, Gotthardt & Greenberg, Miami, for appellee.
HORTON, Chief Judge.
This appeal was taken by the plaintiff from a judgment entered upon a directed verdict in a garnishment proceedings.
Prior to the institution of the garnishment proceedings, the plaintiff had recovered, in a personal injury action arising from an automobile accident, a judgment against one McNaughton, the driver of a truck owned by Bestways, Inc., and insured by Inland Mutual Insurance Company, the appellee here. In the garnishment proceedings from which this appeal arises, the plaintiff proceeded on the theory that the insurance carrier was indebted to the driver, McNaughton, by the terms of the policy insuring Bestways, which provided:
"With respect to the insurance for bodily injury liability and for property damage liability the unqualified word `insured' includes the named insured and also includes any person while *471 using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission."
The garnishee denied liability, contending that at the time of the accident, McNaughton was not driving the truck with the permission of the insured.
At the conclusion of the testimony of appellant's sole witness, McNaughton, he rested his case. The trial court thereupon directed a verdict for appellee. Judgment was entered upon the directed verdict and appeal was taken from that judgment.
The sole question raised on appeal is whether or not the trial court erred in granting the appellee's motion for directed verdict at the close of appellant's case.
Appellant has cited, and we are cognizant of the many cases latest of which is Brady v. Kane, Fla.App. 1959, 111 So.2d 472, 474, which state the proposition that:
"On a motion for directed verdict the trial court will consider the testimony adduced in the cause in the light most favorable to the party moved against; and the moving party admits every conclusion favorable to the adverse party which may rationally be inferred by the jury from the evidence before it."
However, in applying the principle enunciated in the Brady case, we must also consider the application of the converse rule which requires the trial court to direct a verdict for the defendant if, from the evidence submitted, a jury could not lawfully find a verdict for the plaintiff. See Swilley v. Economy Cab Co. of Jacksonville, Fla. 1951, 56 So.2d 914; Gilmer v. Rubin, Fla.App. 1958, 98 So.2d 367; Traurig v. Spear, Fla.App. 1958, 102 So.2d 165; Manganelli v. Covington, Fla.App. 1959, 114 So.2d 320.
Upon a careful review of the record and application of the principles stated, we conclude that the able trial judge was correct in directing a verdict since the evidence demonstrated that a lawful verdict for the appellant could not have been rendered by the jury.
Affirmed.
CARROLL, CHAS., J., concurs.
MILLEDGE, STANLEY, Associate Judge, dissents.
MILLEDGE, STANLEY, Associate Judge (dissenting).
This seems to be the first time an appellate court in Florida has been called upon to determine whether a motor vehicle liability policy, containing an omnibus clause pursuant to the requirement of § 324.151, Fla. Stat., F.S.A., should receive the liberal construction stated in the first section of Chapter 324, Florida Statutes, F.S.A., so as to consider the operator as having control by virtue of initial permission of the owner, or receive a strict construction excluding the operator from the policy for the want of specific permission to use the vehicle at the precise time of the accident.
The great public importance of the question decided impels me not merely to record my disagreement with the decision, which can only be supported on the theory that a strict construction of the financial responsibility statute is applied, but to discuss the basis for my disagreement.
The plaintiff obtained a judgment against McNaughton, the driver of a truck and tractor owned by Bestway, Inc. The owner was originally a co-defendant, but plaintiff took a voluntary non-suit against this defendant. Subsequent to the judgment, the plaintiff brought the present garnishment proceeding against the insurer under a liability policy obtained by Bestway, *472 Inc., which contained the following omnibus clause:
"* * * the unqualified word `insured' includes the named insured and also includes any person while using the automobile, and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission."
The plaintiff contends that terms of the insurance policy included the driver, McNaughton, as an insured, and the defendant insurance company contends otherwise. Whether the driver was an insured depends on whether he was using the truck at the time of the accident with the permission of the owner. The plaintiff undertook to prove permission by the driver, the defendant in the negligence action. At the conclusion of the driver's testimony, the plaintiff rested. On the defendant's motion, the trial judge directed a verdict for the defendant. During the negligence action, the driver gave a deposition to the effect that at the time of the accident, which occurred when the driver was returning drunk from a tavern or nightclub, he was driving without permission, and at that time he was not employed by the owner of the truck. At the trial in the present case, he testified that he did have permission. So far as the testimony and the depositions were in conflict, the determination of which version was true was a question for the jury. In my opinion, there was testimony, which, if believed, would warrant a jury in finding that the owner, in addition to express consent to use the truck for a business purpose, gave implied consent to the driver to use the truck for his personal affairs, but my dissent is not based on so narrow a question. I think that the directed verdict was wrong even if it were correctly assumed that the driver had no specific permission, express or implied, to use the truck except as explicitly directed. One fact is perfectly clear and without any contradiction. That is, that Bestways turned the truck over to the driver in Tampa for the purpose of putting it on the road earning money for the owner through leases from various shippers arranged through Traffic Advisory Service in Miami. These shippers paid the driver for his services during each shipment. If the driver obtained a cargo for a distant point and had no return load, he would telephone the owner in Tampa for instructions. There was nothing in the driver's testimony that indicated that the owner put express restrictions against personal use, but this makes no difference. All that is significant is that the driver had initial permission to use the truck. Actually, he had more than mere permission for he was an agent of the owner. To conclude that initial permission alone is sufficient to bring the driver within the protection of the policy as an insured it is necessary that the policy be given a liberal construction. In some states it would be rational to give such an omnibus clause in a policy a strict construction, but I cannot see how this can be done in Florida without repudiating forty years of the dangerous instrumentality doctrine applied to automobiles on the highways and without ignoring the public policy declaration in Florida's financial responsibility law as to drivers and operators of motor vehicles and the effect given similar statutes in other states.
It is not just an insurance policy here which must be construed but a statute, Chapter 324, Florida Statutes, F.S.A., for the policy was written pursuant to the requirement of the statute. This is true, although the terms of the omnibus clause here are not identical with the requirements of law. The first section of Chapter 324  § 324.011, Fla. Stat., F.S.A.  states the purpose of the legislation. It reads as follows:
"It is the intent of this chapter to recognize the existing rights of all to own motor vehicles and to operate them on the public streets and highways of this state when such rights are used with due consideration for *473 others; to promote safety, and provide financial security by such owners and operators whose responsibility it is to recompense others for injury to person or property caused by the operation of a motor vehicle, so it is required herein that the owner and operator of a motor vehicle involved in an accident shall respond for such damages and show proof of financial ability to respond for damages in future accidents as a requisite to his future exercise of such privileges."
Nothing could be clearer than this expression of a public policy to implement a remedy available to the public already afforded by the rules of liability as declared by the courts of Florida. It is legislative recognition of the dangerous instrumentality doctrine. By providing for financial responsibility it affords a practical means of assuring at least some compensation for those persons damaged on the roads by those legally liable therefor.
The statute affords a number of ways for the owner or operator to prove his financial responsibility, one of which is "furnishing satisfactory evidence of holding a motor vehicle liability policy" (§ 324.031) as defined in § 324.021(8) and § 324.151. So far as is here germane, § 324.151 reads as follows:
"An owner's liability insurance policy shall designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby granted and shall insure the owner named therein and any other person as operator using such motor vehicle or motor vehicles with the express or implied permission of such owner, against loss from the liability imposed by law for damage arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles, within the United states or the Dominion of Canada, subject to limits, exclusive of interest and costs with respect to each such motor vehicle as is provided for under § 324.021(7)."
The terms of the omnibus clause of the present policy are very similar to, but not identical with, § 324.151. The statute says, "with the express or implied permission of such owner"; the policy simply says "permission." The statute says "using"; the policy says "actual use." No authority is needed for the proposition that Chapter 324, being remedial, should be liberally construed, but carrying coals to New Castle, see Konrad v. Hartford Accident & Indemnity Co., 11 Ill. App.2d 503, 137 N.E.2d 855, 860, in which a statute very much like ours was liberally construed. The court considered the same differences between statute and policy. As I do, the court concluded that the differences are immaterial but "the statutory omnibus clause, in any event, must be, under the circumstances here, considered as voluntarily adopted by the insurer and written into this policy, and if there be any real differences between that and the similar clause stated in the policy, which we doubt, the statutory omnibus clause must control."
The statutory language "express or implied permission" surely must be taken to mean the same thing the courts of this state for forty years have meant in holding the owner liable for the negligence of one using with the owner's "knowledge and consent"[1] or "entrusted."[2] Since Chapter 324 is simply implementing the relationship of owner and operator in the public interest, we should look a bit further at what our courts have previously decided. The operator, the servant of the owner, may have violated his instructions as to the use of the vehicle, but this does not exonerate the owner where he "entrusted" *474 the vehicle to the operator.[3] That the operator was employed by the owner is sufficient to prove operation with the owner's "knowledge and consent."[4] To fix liability on the owner, his relationship to the operator need not be master and servant or principal and agent. "Permission" without regard to what otherwise would be the legal relationship is sufficient.[5] "When one permits another to operate his automobile under his license, he becomes as a matter of law the principal and the driver becomes his agent for the purpose."[6]
The owner's consent to another to operate the car continues although the owner riding in the car became unconscious from drunkenness and could neither revoke the permission nor specifically continue it. This is immaterial since consent was initially given, for the owner "is liable for the negligent operation of it [the car] no matter where the driver goes, stops or starts."[7] The consent given cannot even be limited by express contract. The owner's liability is not affected by a provision in a written contract of bailee that the car renter alone will operate the car. If the bailee nevertheless allows someone else to drive the car, the owner is still liable.[8] In the Susco case, Mr. Justice Drew said for the court:
"In the final analysis, while the rule governing liability of an owner of a dangerous agency who permits it to be used by another is based on consent, the essential authority or consent is simply consent to the use or operation of such an instrumentality beyond his own immediate control."
And in the same opinion:
"[W]hen control of such a vehicle is voluntarily relinquished to another, only a breach of custody amounting to a species of conversion or theft will relieve an owner of responsibility for its use or misuse. The validity or effect of restrictions on such use, as between the parties, is a matter totally unrelated to the liabilities imposed by law upon one who owns and places in circulation an instrumentality of this nature."
Prior to adopting the financial responsibility statute, the legislature applied the dangerous instrumentality doctrine by providing that the legal relationship between owner and operator need not be alleged, but only the ownership of the car, casting the burden on the owner to plead the facts relied on for absence of liability for the acts of the driver. Section 51.12, Fla. Stat., F.S.A.
Since for the operator to violate his instructions, or even to violate a contract of bailment restricting use, does not prevent liability of the owner, then it must be beyond all doubt that the public policy of Florida, in requiring financial responsibility of those liable, is that permission initially given is all that is required to bring an operator to whom initial permission has been given, within the scope of § 324.151, and make the operator an insured. There is not the slightest doubt from the testimony of McNaughton, the operator, that the owner voluntarily turned over to McNaughton the control of the truck for the purpose of having him drive it on the highways of this and other states and that the permission granted had never *475 been revoked. Certainly McNaughton had not stolen the truck, nor had he converted it to his own use. Whatever doubt there was concerned the question whether he lacked specific permission. It is my conviction that this doesn't make the slightest difference, one way or the other. The testimony doesn't indicate violation of express instructions, but rather the absence of specific permission to use the truck at the particular time and place of the accident, but this again is a matter of no significance.
In view of the public policy of Florida, so clearly expressed, both by the courts and by the legislature, it should be unnecessary to look at how the courts of other states have construed similar omnibus clauses in insurance policies, both where no public policy of such as Florida's has been declared by the courts or by the legislatures through financial responsibility laws.
In states which exonerate the owner of liability if his servant violates instructions or his agent is operating outside the scope of his employment, one might suppose that comparable construction would be given an omnibus clause in a policy, in the absence of legislative public policy in financial responsibility laws. Many of these are cited in Guzenfield v. Liberty Mut. Ins. Co., 1934, 286 Mass. 133, 190 N.E. 23, and others may be found in the annotations of 5 A.L.R. 600. Nevertheless, some courts, with no reason to alter their conservative view, except the terms of the policy itself, have construed the omnibus clause liberally and held initial permission sufficient. One of these cases is Dickinson v. Maryland Casualty Co., 101 Conn. 369, 125 A. 866, 869, 41 A.L.R. 500, decided before the adoption in Connecticut of a financial responsibility law requiring a policy with an omnibus clause. The permission granted was to take the owner's car for the purpose of driving home in order for the borrower to change his clothes. On the way, he stopped at a saloon for a drink and picked up three friends, including the plaintiff's decedent, to take them home. This involved considerable deviation from the original route to the borrower's home. Once more he stopped the car at another saloon and all had more drinks. On the way to plaintiff's home, the operator lost control, ran into a tree, killing plaintiff's decedent. Plaintiff obtained a judgment against the driver and sought to collect on an insurance policy procured by the owner. The policy contained an omnibus clause which made the driver an insured "provided such use or operation is with the permission of the named assured." Asked the court:
"Does this language mean the permission to use the car or the permission to use the car in a specified manner and for a specified purpose? These are the two constructions which confront us, and we are to determine which is the correct one * * *.
"The insurer desired to obtain insurance, and for this object, it extended in its policy the benefits of the policy to the guest riding in the insured's automobile, provided the guest was riding with the permission of the insured. If the insurer had intended by this proviso to restrict the permission to its specifically named objects, it would, in each case, be necessary to make inquiry into the purpose and extent of the permission, while by specific provision the insurer could readily have done this and avoided the inquiry. The result would have been a policy less acceptable to prospective insured. It would have invited in most cases an investigation as to whether the permission granted had been violated in a particular case or not. In place of a certain provision in the policy of definite meaning it would have inserted a provision breeding uncertainty, inviting litigation, and making the defense of a departure from the permission an available and often used *476 defense. This is exactly what the courts and Legislature have frowned upon  uncertain and ambiguous provisions in contracts of insurance under which insurers seek an escape from the obligation of paying the insurance indemnity contracted for.
"The fact that the insurer in this case did not so restrict the term permission is strong evidence that it did not by this provision intend this; to justify the strict construction claimed by the insurer, the terms of the policy prepared by the defendant ought to specifically so provide. * * *
"Louis Maisano gave permission to Riccitelli to take the car and operate it on the streets of New Haven in order to go to his home. It would be an unreasonable curtailment of the permission granted to hold that any deviation or departure from the purpose indicated by Riccitelli in his request annulled the permission and put Riccitelli in the position of one unlawfully using the car."
The court held that Riccitelli was an insured under the policy.
Also without regard to a financial responsibility statute and construing the omnibus clause merely as a voluntary contract, the court concluded, in Stovall v. New York Indemnity Co., 1928, 157 Tenn. 301, 8 S.W.2d 473, 477, 72 A.L.R. 1368, that if 
"[T]he automobile covered by the policy is delivered to another for use, with the permission of the owner or insured, his subsequent use of it is with the permission of the insured, within the meaning of the policy, regardless of whether the automobile is driven to a place or for a purpose not within the contemplation of the insured when he parted with possession.
"The facts stated hereinabove bring the driver of the automobile at the time of the accident within the protection of the policy, as herein construed, as an `additional assured.' His use of the car at the time of the accident followed the delivery of possession to him by his employer, acting through the sales manager."
To like effect and without a legislative policy requiring liberal construction of the insurance contract are Denley v. Oregon Automobile Ins. Co., 1935, 151 Or. 42, 47 P.2d 245; Odden v. Union Indemnity Co., 1930, 156 Wash. 10, 286 P. 59, 72 A.L.R. 1363; Liberty Mutual Ins. Co. v. Tiller, 189 Va. 544, 53 S.E.2d 814.
I now turn to a group of cases, all of which liberally construe the omnibus clause to mean that initial consent or permission by the owner to the operator is sufficient to bring the operator within the policy as an additional assured. In this group, this result is reached because the public policy of compulsory financial responsibility statutes compels a liberal construction to effectuate the legislative purpose of protection to the public. This was done despite the rules of liability which would exonerate the owner of liability under circumstances which in Florida the owner would be held liable. Since the various legislatures decided that the public should be protected by requiring the operator to be an assured provided he had the use of the vehicle with the owner's permission, what constitutes permission is by these courts, without exception so far as I can ascertain, construed to accomplish the public protection by holding initial permission sufficient. A good example is Guzenfield v. Liberty Mut. Ins. Co., supra, [286 Mass. 133, 190 N.E. 24] in which the operator, although he disobeyed the owner's instructions as to use, was held to be an assured because he was using the car with initial permission. Since the effect of the statute upon the proper construction of the policy is important to a proper understanding, a lengthy quotation from the Guzenfield case is justified:

*477 "Detailed discussion of these cases [strictly construing the omnibus clause and holding the insurer not liable] is unnecessary since in the case before us there is present an element, lacking in them, which we deem of supreme importance. The policy here in question was issued to meet the requirements of our statute of compulsory motor vehicle insurance. * * * In requiring the policy  a condition of valid registration  to cover not only the owner but also any one responsible to him in its use, it contemplated that the liability of the insurer should, so to speak, run with the car unaffected by the owner's action unless its presence on the public ways was without his sanction. If by personal use or by operation through a servant or agent the owner permits the vehicle to be on the public ways, he or the user responsible to him (become an assured by virtue of the statute), may incur liability which the insurer must make good to the limit of the insurance. This purpose will, to a considerable extent, be frustrated if the law is construed as the defendant argues that it should be. The full benefit of the compulsory security and of the provision precluding avoidance by default of the owner will be lost, if violations of rules of conduct laid down by an owner to be observed by such as he permits to use his motor vehicle upon our ways are held to defeat an injured person's enforcement of the policy by destroying the owner's consent to the use.
"The statutory language is appropriate and sufficiently inclusive to mean that if his motor vehicle is present in use or operation on the ways of the Commonwealth with the owner's consent by some one responsible to the owner, then, under the compulsory Motor Vehicle Insurance Law, the owner's consent to the immediate conduct of the user at the moment of an accident is immaterial. We think it should be so construed. O'Roak v. Lloyds Casualty Co. (Mass.) 189 N.E. 571. Nothing in Boyer v. Massachusetts Bonding & Ins. Co., 277 Mass. 359, 178 N.E. 523, or Johnson v. O'Lalor, 279 Mass. 10, 180 N.E. 525, requires a different conclusion. Neither dealt with the point here discussed. Obviously Meade, the chauffeur, was responsible to his employer for the result of his disobedient conduct. His disobedience did not destroy his responsibility to the owner for the operation of the truck. By the terms of the policy, he was insured under it. The plaintiff therefore was entitled to enforce it."
Another case in this group is Konrad v. Hartford Accident & Indemnity Co., supra [11 Ill. App.2d 503, 137 N.E.2d 861]. Here an employee who had the owner's initial permission to use a truck was specifically instructed that under no circumstances was the truck to be used for any purpose except business which ended each day about 5:00 p.m. About midnight, while on a joy ride, the operator negligently hurt the plaintiff. The driver was held to be an assured under the omnibus clause in the insurance policy since he was using the truck with the owner's permission.
"[I]f the original taking by the user is with the named insured's consent, every act of the user subsequent thereto while he is driving the vehicle is with the named insured's permission so far as the omnibus clause is concerned, assuming there is no termination of permission; a deviation from the permission is immaterial; the only essential thing is that permission be given in the first instance; the rule is based on the theory that the insurance contract is as much for the benefit of the public as for the insured, and that it is undesirable to permit litigation as to the details of the permission and use; this is the view followed also in Connecticut, Louisiana, Massachusetts, New Jersey, Tennessee, Wisconsin, and *478 probably North Dakota, Oregon, Oklahoma, Florida, Indiana, and West Virginia, and is the weight of authority: 5 A.L.R.2d pp. 622, 624, 629 ff; [and many Illinois cases]."
A good statement of the impact of financial responsibility statutes is contained in the opinion in Hodges v. Ocean Accident & Guarantee Corporation, 1941, 66 Ga. App. 431, 18 S.E.2d 28, 31. Georgia then had no such statute except as to common carriers. As a consequence, in Georgia a gross deviation from the terms of the initial permission means that the user is not within the scope of the omnibus clause. In discussing the rule as a consequence of financial responsibility laws, the Georgia court observed:
"[I]t is the rule in some states that if the original bailment was made with the consent of the insured, it is immaterial that subsequently the automobile is driven to a place or for a purpose not within the contemplation of the insured when he parted with possession; accordingly, the insurance company is held liable even though the accident happens while the car is being used on an errand not embraced within the limits of the permission. This is the doctrine of `first instance permission'. This construction of the policy is in accord with the purpose of the various statutes adopted by several states requiring owners of automobiles to carry indemnity or liability insurance. These statutes are enacted to protect the public using the streets and highways as a matter of public policy. The intent of the legislature is to protect those injured by automobiles, no matter who may be driving the car or where it is driven, provided the owner has voluntarily entrusted possession of the car to the driver for some purpose, and regardless of whether the person in possession of the car observes or breaks the contract of bailment."
In view of the forty-year-old court-declared and legislatively recognized public policy of Florida that an owner of a motor vehicle is legally liable for the negligence of the operator to whom permission was initially granted by the owner, and the legislative public policy explicitly expressed in Chapter 324, which implements the strict rule of liability by requiring owners and operators to furnish financial responsibility to respond to that liability, I think that the insurance policy here, written pursuant to legislative command, should be liberally construed. A liberal construction  one which holds that the owner's initial permission to operate is all that is required to bring the operator within the policy as an insured  involves nothing more than declining to repudiate the principle that a motor vehicle in operation is a dangerous instrumentality and that its owner, by whose decision the vehicle is put on the highways, must shoulder the consequent responsibility, whether this consists of suffering a judgment because of the negligence of the operator, or consists of the necessity to supply financial responsibility to such members of the public negligently damaged by such vehicle. If the owner chooses procuring a liability insurance policy as his way of supplying financial responsibility not only for the manner of his own driving but the manner of driving by any other with his permission, and the insurance company chooses, in consideration of payment of a premium, to write such a policy, the company should be required to accept and abide by the public policy of the state in which the insurance contract is to be performed.
The courts of Florida would not, where initial permission has been given, allow the owner to escape liability because the operator did not have specific permission to use the vehicle for the mission on which he was engaged when the accident occurred. No more did the legislature intend that an insurance company escape liability under the same circumstances.
*479 As has already been observed, the plaintiff dropped Bestway, Inc., as a defendant. Why the plaintiff did this I do not know, nor is the reason any concern of mine. On the basis of McNaughton's testimony in the instant case, there could be no question but that a prima facie case against the owner would be established. For exactly the same reason, I am convinced that McNaughton's testimony made out a prima facie case of liability against the defendant insurance company. In either situation, for the defendant to prevail it should have to convince the jury by proof, if it has any, that Bestway never gave McNaughton permission to have control of the truck in the first place, or that it revoked initial permission; in short, that at the time of the accident McNaughton was unlawfully in possession of the truck. I think that the directed verdict for the insurance company was wrong, and that it should be required to meet the prima facie case against it.
NOTES
[1] Herr v. Butler, 101 Fla. 1125, 132 So. 815, 816; Greene v. Miller, 102 Fla. 767,
[2] Chase & Co. v. Benefield, Fla. 1953, 64 So.2d 922.
[3] Chase & Co. v. Benefield, supra note 2.
[4] City Grocery Co. v. Cothron, 117 Fla. 322, 157 So. 891, 892.
[5] Lynch v. Walker, 159 Fla. 188, 31 So.2d 268.
[6] Weber v. Porco, Fla. 1958, 100 So.2d 146, 149.
[7] Boggs v. Butler, 129 Fla. 324, 176 So. 174, 176.
[8] Susco Car Rental System of Fla. v. Leonard, Fla. 1959, 112 So.2d 832, 837.