Dickinson *v.* Maryland Casualty Co.

---

GEORGE  J.  DICKINSON,  ADMINISTRATOR,  *vs.*  THE
MARYLAND  CASUALTY  COMPANY.

Third Judicial District, New Haven, June Term, 1924.
WHEELER, C. J., BEACH, CURTIS, KEELER and KELLOGG, Js.

Where a policy of insurance is so framed as to leave room for two con-
    structions, the words used should be interpreted most strongly
    against the insurer.

Dickinson *v.* Maryland Casualty Co.

In the present case, the defendant insurance company issued to M a policy under which it agreed to indemnify him against legal liability to any person for injuries or death caused by his operation of his automobile, and by a further provision, commonly known as the "omnibus coverage clause," it extended the same protection to any person riding in or legally operating the car, "provided such use or operation" was with the permission of M, or of an adult member of M's household. On the evening in question, M's brother, who was an adult member of his household, gave R permission to drive the car to his home for the purpose of changing his clothes, and told him to hurry back. Instead of proceeding to his home, R stopped at a place, formerly a saloon, where he met several friends, among whom was D, and from there, the party drove to two other places, formerly saloons, in the opposite direction from R's home, and, thereafter, while they were returning to the center of the city toward R's home to find out what time it was, the car skidded into a tree as a result of R's negligence, and D was killed. D's administrator, the plaintiff in this action, recovered an unsatisfied judgment against R, and made demand upon the defendant for payment. The defendant claimed that it was not liable under its policy, because at the time of the accident, R had deviated from the purpose for which he was permitted to use the car. *Held* that the defendant's claim was without merit, since, in the absence of an express provision to that effect, the policy could not be narrowly construed in the insurer's favor to limit its liability to such injuries only as might occur during the use of the car for the specified purpose and in the specified manner for which the permission was granted. (*Two judges dissenting.*)

Argued June 11th—decided July 28th, 1924.

ACTION to recover the amount of an unpaid judgment for damages for causing the death of the plaintiff's intestate by negligence, rendered against one who was alleged to have been covered by the omnibus clause in an insurance policy issued by the defendant to a third person, brought to the Superior Court in New Haven County where a demurrer to the complaint was overruled (*Brown, J.*) and the cause was afterward reserved (*Hinman, J.*), upon an agreed statement of facts, for the advice of this court.

*Walter J. Walsh,* for the plaintiff.

*DeLancey S. Pelgrift,* with whom was *Philip Pond,* for the defendant.

CURTIS, J.   In April, 1921, Donato Maisano of New Haven was the owner of a Westcott automobile, and procured from the defendant company a policy of insurance containing the following provisions covering the persons, firms or corporations insured under the policy:

Clause I.   " To insure said named Assured, in accordance with the provisions of said General Agreements, as respects the automobile owned or operated by the named Assured and listed in said General Agreements."

Clause II.   "The insurance provided by this policy is so extended as to be available, in the same manner and under the same conditions as it is available to the named Assured, to any person or persons while riding in or legally operating the automobile described in the General Agreements, and to any person, firm or corporation legally responsible for the operation thereof, provided such use or operation is with the permission of the named Assured, or, if the named Assured is an individual, with the permission of an adult member of the named Assured's household other than a chauffeur or a domestic servant; provided further, insurance payable hereunder shall be applied first to the protection of the named Assured, and the remainder, if any, to the protection of other persons entitled to insurance under the provisions and conditions of this clause, as the named Assured shall in writing direct."

Donato Maisano, the named assured, and other assured under Clause II above, are insured by the policy as to the use of a Westcott car as follows:  "(A) Against loss from liability imposed by law upon the

Assured for damages on account of bodily injuries including death resulting therefrom, accidentally suffered or alleged to have been suffered by any person or persons, caused by an automobile owned or operated by the Assured, and described in the Schedule hereof, and for the purposes named therein, . . . within the confines of the United States and Canada, provided such bodily injuries or death are suffered as the result of accident occurring within the term of the policy as in . . . [Clause II] hereof set out."

The policy also contained the following agreements by the defendant company:

Clause III. "In addition to the limit set forth in the General Agreements, the Company will, at its own cost, (court costs and all interest accruing after entry of judgment being considered a part thereof regardless of the limit of liability set forth in the General Agreements), investigate all accidents covered thereunder, and defend all suits thereon, even if groundless, of which notices are given to it as hereinafter required, unless the Company shall elect to settle the claim or suit."

Clause IV. "The insolvency or bankruptcy of the Assured shall not release the Company from the payment of damages for injuries or death sustained or loss occasioned during the life of the Policy; and the pre-payment of any judgment that may be recovered against the Assured upon any claim covered by the policy is not a condition precedent to any right of action against the Company upon the policy, but the Company is bound to the extent of its liability under the policy to pay and satisfy any such judgment and to protect the Assured against the levy of any execution issued upon the same; and an action may be maintained upon any judgment by the injured person, his or her heirs or personal representatives,

as the case may be, to enforce the liability of the Company as in the policy set forth and limited."

Donato Maisano duly performed all the terms of the policy to be performed by him.

One Riccitelli was an employee of a company in which Donato Maisano was interested, and was a duly licensed operator of motor-vehicles in Connecticut. Louis Maisano was a brother of Donato, and was an adult member of Donato's household and living at his home, 11 Wooster Place, New Haven, and Louis was not a chauffeur or domestic servant of Donato. Donato Maisano kept this insured Westcott car in a garage in the rear of his home. When Riccitelli finished his work on October 8th, 1921, shortly after six o'clock, he met Louis Maisano at the garage in the rear of Donato's house, and asked him if he could borrow the Westcott car of Donato Maisano to go home and change his clothes; Louis replied: "All right and hurry back." Thereupon Riccitelli took the Westcott car and drove away with it from the garage with the knowledge and permission of Louis Maisano.

Riccitelli at this time lived in the southern portion of the city of New Haven, and about one mile southerly from the corner of Congress Avenue and Commerce Street. He drove from Wooster Place to the Commerce Street junction with Congress Avenue, where he stopped the car at a saloon formerly conducted by Flynn Brothers, for the purpose of getting a drink. Up to this point the route he took, although not the most direct route to reach his home, was one of several routes that he could reasonably have taken. He met at Flynn Brothers three men, Samuel Dickinson, the plaintiff's intestate, Sugrue and Walpole. He spent about fifteen minutes in Flynn Brothers in the company of these men conversing with them. Samuel Dickinson lived on Rosette Street at this time, and his

home was in the same general direction as Riccitelli's home. While there, Dickinson asked Riccitelli if he was going home and Riccitelli replied, "Yes." Thereupon Dickinson replied, "I'll come with you," and Riccitelli assented. While they were talking there and before starting it was further planned by the two men to first take Sugrue half way home, up to the junction of Dixwell Avenue and Munson Street, and then take Dickinson home.

Thereupon the four men entered the automobile, and Riccitelli drove the car to the junction formed by Dixwell Avenue, Shelton Avenue, Munson and Orchard streets, a distance of more than a mile in a northerly direction from the corner of Congress Avenue and Commerce Street, and in the northwestern part of the city of New Haven. He stopped there at a place where all the men got out and had some drinks; it did not appear what they drank. In driving in this direction, Riccitelli was driving in a direction away from his home. From there Riccitelli drove the car through Munson Street over to Ashmun Street, where he stopped at a place not far from the plant of the Winchester Repeating Arms Company. After they left this place, Riccitelli started to return, driving down Ashmun Street, Sugrue having left the car. Walpole and Dickinson sat in the back seat of the car. Riccitelli then intended to drive down Ashmun Street to Grove Street, thence to Church Street, where he expected to look at the City Hall clock to see if he still had time to go to his home, and in the event he did not, he intended to take the car back to the Maisano garage at number 11 Wooster Place at about 7:30 o'clock. On his way back, as he was turning the car from Ashmun Street into Grove Street, the car skidded against a tree, due solely to his negligence in driving it, and Dickinson was mortally wounded as a result thereof.

The administrator of the estate of Samuel Dickinson brought an action against Riccitelli in the Superior Court in New Haven County, claiming damages against him for his negligence causing the death of Dickinson, and in the action tried to a jury, a judgment was rendered in favor of the administrator to recover of Riccitelli the sum of $4,000 damages and his costs taxed at $64.86.

There are no claims outstanding against Donato Maisano, against which he is entitled to protection under the terms of the policy, nor does he make any claim for protection of any kind under the terms of the policy, nor has he any direct financial interest in the above action other than to see justice done between the parties. The judgment has not been paid, and the defendant refuses to pay it although requested to.

The question upon which our advice is desired is the following: "Whether the permission given by Louis Maisano was such permission as to bring Riccitelli within the terms and meaning of the provisions of the policy, and especially the provisions of Clause II, commonly referred to and called the 'Omnibus Coverage Clause', at the time the injuries were received by Dickinson." This reservation presents for our advice the inquiry whether, under the above policy of insurance and the facts found, the permission given by Louis Maisano to Riccitelli to use the insured car "was such permission as to bring Riccitelli within the terms and meaning of the provisions of the policy, and especially the provisions of Clause II, commonly referred to and called the 'Omnibus Coverage Clause,' at the time injuries were received by Dickinson."

The policy insured the "named assured," Donato Maisano, who owned the Westcott car covered by the policy and who secured the policy. In addition to

insuring the named assured, Donato Maisano, the policy is so extended by Clause II as to be available, in the same manner and under the same conditions as it is available to the named assured, to any person or persons while riding in or legally operating the automobile, and to any person legally responsible for the operation thereof, provided such use or operation is with the permission of the named assured, or, if the named assured is an individual, with the permission of an adult member of the named assured's household, other than a chauffeur or a domestic servant. Louis Maisano was admitted to be such a member of Donato Maisano's household.

The purpose of this policy was not only to protect a person "riding in" or "legally operating the car" with the permission required by the policy from liabilities deemed in law to have been caused by him, but also, under Clause IV, its purpose was to protect any person injured by the operation of the car by giving him a cause of action against the insurer (the defendant) for injuries deemed by the law to have been caused by the operation of the car.

The statement of facts already recited shows that Riccitelli was given permission to use the assured's Westcott car to go to his home in the southern part of New Haven for the purpose of changing his clothes. And it also shows that Dickinson was riding in the car as a guest at the time Riccitelli's use of the car caused injuries to him. The policy insured the "assured, in accordance with the provisions of said general agreements, as respects the automobiles owned or operated by the named assured and listed in said general agreements." It then extended the indemnity made available by the policy to the assured to the guest riding in the car, "provided such use or operation is with the permission of the named assured,"

by giving him or his representative an action upon any judgment which he might obtain against the person causing such injury to the limit of the indemnity provided by the policy, after its proceeds had been first applied to the protection of the assured. The plaintiff, administrator of Dickinson, the decedent, is entitled to maintain his action against the defendant insurer under this policy, provided the automobile in which Dickinson was riding as a guest at the time he suffered his injuries, was being used with the permission of the assured, Donato Maisano. The defendant claims that the car was being used at this time without the permission of the assured, since Riccitelli, the driver of the car, had secured permission to use the car in going to a certain place for a certain purpose and had deviated or departed from a reasonable route and from the purpose for which the permission had been granted. In short, the claim is that Riccitelli, at the time of the accident, was neither upon the route, nor engaged in fulfilling the purpose, for which the permission had been granted him.

The plaintiff, on the contrary, claims that at the time of the accident, Riccitelli was using the car under the permission granted him by the assured. The question at issue is to be resolved by the construction to be given the language of the policy, "provided such use or operation is with the permission of the named assured." Does this language mean the permission to use the car, or the permission to use the car in a specified manner and for a specified purpose? These are the two constructions which confront us, and we are to determine which is the correct one.

Let us see how the law construes a provision of a contract of insurance which invites two constructions. Richard on Insurance (3d Ed.) § 90, thus states the accepted rule: "The contract of insurance being a

unilateral contract framed mainly in the interest of insurers, and the insured being compelled to accept the form offered, in order to secure insurance, any ambiguity as to the purpose or meaning of its terms, or what property was intended to be covered, will be construed in favor of the insured." In *Dresser* v. *Hartford Life Ins. Co.*, 80 Conn. 681, 710, 70 Atl. 39, we say: "Even if it is doubtful which of the two claimed constructions of the contract should be adopted, the doubt should be resolved in favor of the insured." In *Fricke* v. *United States Indemnity Society*, 78 Conn. 188, 191, 61 Atl. 431, we say: "Were it doubtful from the language of the policy whether it was intended to give to the insured or to the insurer the right to elect under which of the provisions of the two sections in question the extent of the defendant's liability is to be determined, the doubt should be resolved in favor of the insured and against the company issuing the policy." And we cite in support of this doctrine, *Boon* v. *Ætna Ins. Co.*, 40 Conn. 575, 586, and quote with approval from *Liverpool & L. & G. Ins. Co.* v. *Kearney*, 180 U. S. 132, 136, 21 Sup. Ct. 326: "To the general rule there is an apparent exception in the case of contracts of insurance, namely, that where a policy of insurance is so framed as to leave room for two constructions, the word used should be interpreted most strongly against the insurer. The exception rests upon the ground that the company's attorneys, officers or agents prepared the policy, and it is its language that must be interpreted." See also *Smith* v. *Fidelity & Deposit Co.* (N. J.), 120 Atl. 322.

In *Barnes* v. *Dirigo Mut. Fire Ins. Co.*, 122 Me. 486, 491, 120 Atl. 675, we find the rule stated in that application to a claim for indemnity: "No rule, in the interpretation of a policy, is more fully established, or more imperative and controlling, than that which

declares that, in all cases, it must be liberally construed in favor of the insured, so as not to defeat without a plain necessity his claim to indemnity, which, in making the insurance, it was his object to secure. When the words are, without violence, susceptible of two interpretations, that which will sustain his claim and cover the loss must, in preference, be adopted. . . . The object of the contract being to afford indemnity, it will be so construed in case of doubt, as to support rather than to defeat that indemnity provided for." See also 32 Corpus Juris, p. 1155; 14 R. C. L. p. 926, § 103; 1 Joyce on Insurance (2d Ed.) § 222.

Construing this provision in the light of these settled rules of construction, we must adopt, between the two claimed constructions, that which is most favorable to the insured, the decedent. In the presence of a reasonable doubt we must resolve it in favor of the insured. Between two interpretations, we are required by the rules of legal construction to adopt that which will sustain his claim. Applying these rules of construction, the plaintiff must prevail. But we reach the same result without the aid of the rules of construction. Let us seek the reasonable construction to put upon this language. The insurer desired to obtain insurance and for this object it extended in its policy the benefits of the policy to the guest riding in the insured's automobile, provided the guest was riding with the permission of the insured. If the insurer had intended by this proviso to restrict the permission to its specifically named objects, it would, in each case, be necessary to make inquiry into the purpose and extent of the permission, while by specific provision the insurer could readily have done this and avoided the inquiry. The result would have been a policy less acceptable to prospective insured. It would

have invited in most cases an investigation as to whether the permission granted had been violated in a particular case or not.   In place of a certain provision in the policy of definite meaning, it would have inserted a provision breeding uncertainty, inviting litigation, and making the defense of a departure from the permission an available and often used defense.   This is exactly what the courts and legislature have frowned upon—uncertain and ambiguous provisions in contracts of insurance under which insurers seek an escape from the obligation of paying the insurance indemnity contracted for.

The fact that the insurer in this case did not so restrict the term "permission" is strong evidence that it did not by this provision intend this.   To justify the strict construction claimed by the insurer, the terms of the policy prepared by the defendant ought to specifically so provide.   The construction claimed by the defendant would convert all cases of this character into a contest as to the exact words spoken when permission was secured, and to an attempt upon the trial to convert by refinement any use of the car into a departure sufficient to annul the permission granted.   If the departure were from the place permitted, be it near or far, or from the purpose named, be it substantial or otherwise, the insured must fail in his recovery.   The business of the insurance company was to sell its insurance under this policy.   Indemnity for the guest or family of the assured riding in the car was a feature of the policy.   What sort of an indemnity to them would it be if they were bound by the strict limitations of the permission of the insured?   It would be necessary in advance of entering the car for them to ascertain these limitations and then to endeavor to see that the driver of the car enforced them.   Is it likely that the insurer would insert such a provision

Dickinson v. Maryland Casualty Co.

leading to such consequences? And how could the insured ever be assured that he had secured the extension of the indemnity of this policy for his guest or family or the guest or family of him to whom the insured gave the permission, if any departure from that permission destroyed the indemnity? The purported object of this policy was to indemnify this guest. No construction of this policy should be permitted, in the absence of plain language to that end, which would destroy the guest's claim to indemnity, which was one of the objects of this policy. A defense of that character by an insurer is not favored in law.

Louis Maisano gave permission to Riccitelli to take the car and operate it on the streets of New Haven, in order to go to his home. It would be an unreasonable curtailment of the permission granted, to hold that any deviation or departure from the purpose indicated by Riccitelli in his request, annuled the permission and put Riccitelli in the position of one unlawfully using the car. Riccitelli undertook to take a friend in the car a mile toward his home in the northern part of the city, and another friend to his home near that of Riccitelli in the southern part of the city. These slight deviations from the route to his home, in a swiftly moving automobile, are too unimportant to have attached to them by construction the import of annulling the protective features of this insurance policy.

The Superior Court is advised that the question reserved for our advice should be answered in the affirmative.

In this opinion WHEELER, C. J., and KEELER, J., concurred.

BEACH, J. (dissenting). Riccitelli received permission to use the car in question for the specific and

limited purpose of going home and changing his clothes. Instead of doing so, he first drove to a saloon, where he stayed fifteen minutes, and took in three passengers; then drove more than a mile directly away from his home to another drinking place, and then to a third place. Being then doubtful whether it was not already time to return the car to the owner's garage, he started back toward the garage, intending to find out on the way whether he still had time to go home and change his clothes, and if not, to return the car to the garage. Before he began to use the car for the permitted purpose, it skidded into a tree and Dickinson was killed. On these facts, I do not think the car was being used with the permission of Louis Maisano at the time of the accident. As the opinion will furnish a precedent for the construction of similar policies of insurance, I record my opinion that the parties to the contract did not intend, by the terms used, that the proceeds of the policy should be exhausted in consequence of a wholly unauthorized use of the car. Yet this will be the result, if Riccitelli, having obtained a limited permission to use the car for a specific purpose, may make himself and those whom he invites to ride with him, third parties beneficiary of the policy while he is using the car for a different purpose not consented to by the owner or his representative.

In this opinion KELLOGG, J., concurred.