L. Louis Karton, Administrator of the Estate of Robert Weiss, Deceased (Railway Express Agency, Inc., Appellee) v. New Amsterdam Casualty Company, Appellant.

Gen. No. 37,970.

Heard in the first division of this court for the first district at the February term, 1935. Opinion filed May 6, 1935.

ROBERTSON, CROWE & SPENCE, of Chicago, for appellant; BURT A. CROWE, of counsel.

CUTTING, MOORE & SIDLEY, of Chicago, for appellee; KENNETH F. BURGESS, DOUGLAS F. SMITH and HOWARD NEITZERT, all of Chicago, of counsel.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

In a suit on an automobile insurance policy there was a trial before the court without a jury and a finding and judgment in plaintiff's favor for $1,617.50, and defendant appeals.

Counsel for defendant in their brief say that garnishment proceedings were instituted on a judgment

and interrogatories filed and they contend that the garnishee should have been discharged. This is a misapprehension. There was no garnishment proceeding but the cause was instituted upon an insurance policy issued by the defendant covering an automobile owned by Clara Shepard.

The record discloses that defendant, the New Amsterdam Casualty Company, issued its policy of insurance to Mrs. Clara J. Shepard covering a Cadillac automobile owned by her. The pertinent part of paragraph 8 of the policy is as follows:

"To EXTEND the insurance provided by this Policy, so as to be available, in the same manner and under the same conditions as it is available to the named Assured, to any person or persons while riding in or legally operating any of the automobiles described in the Schedule, and to any person, firm or corporation legally responsible for the operation thereof, provided such use or operation is with the permission of the named Assured."

The evidence shows that while the policy was in force, Clara J. Shepard, accompanied by a friend, Robert Weiss, a police officer, took a drive in the automobile and returned to Mrs. Shepard's home in the car about 12:30 o'clock in the morning: that Weiss lived four or five blocks from Mrs. Shepard's home and she told him he could take the car to go to his home and to bring it back the next morning. He drove away in the car, did not go to his home but drove around Chicago, got drunk, and about 5:30 o'clock in the morning was driving the car about five miles from Mrs. Shepard's home at a speed of between 70 and 90 miles an hour, shooting his revolver out of the automobile. He ran head on into a truck belonging to the Railway Express Company, demolishing the truck and the automobile and he was killed. The Express Company brought suit against the administrator of his

estate. The defendant insurance company was notified and defended the suit, but there was a judgment for $1,600 in favor of the Express Company. The insurance company, although requested, refused to pay the judgment and afterward the administrator of the estate of Robert Weiss, deceased, brought the instant suit against the insurance company on the policy. The Railway Express Co. intervened and was made coplaintiff. Afterward the administrator of Weiss' estate was dismissed out of the case. There was a trial before the court, as stated, and a finding and judgment in favor of the Railway Express Co. and against the defendant insurance company for $1,617.-50, being the amount of the judgment and costs which had theretofore been rendered against the estate of Weiss, deceased.

Plaintiff contends the evidence does not show that Mrs. Shepard gave Weiss permission to use the automobile with the understanding that he should drive it only to his home, which was four or five blocks distant from her home; that the evidence shows she did not know where he lived. While obviously there was no express statement that Weiss could not drive the car except to his home, returning it in the morning, the evidence discloses that Mrs. Shepard understood he was to drive the car to his home and return it to her the next morning.

Counsel for both sides seem to agree that the question for decision is, Was Robert Weiss using the automobile at the time of the accident with the permission of Mrs. Shepard within the meaning of the policy?

On this question defendant's position seems to be that it is obvious Mrs. Shepard did not give Weiss permission to drive the car around Chicago as he was doing, and therefore the automobile was not being used with her permission at the time of the accident; while on the other hand, the position of plaintiff seems

to be that since Weiss was permitted to take the automobile in the "first instance" there was liability although Weiss did not drive to his home but many miles distant therefrom.

The question is not free from difficulty and there seems to be a diversity of opinion in the adjudicated cases, but we think the contention of plaintiff must be sustained. *Dickinson v. Maryland Cas. Co.,* 101 Conn. 369; *Stovall v. New York Indemnity Co.,* 157 Tenn. 301; *Drewek v. Milwaukee Auto. Ins. Co.,* 207 Wis. 445; *Odden v. Union Indemnity Co.,* 156 Wash. 10; *Maryland Cas. Co. v. Hoge,* 153 Va. 204; *United States Fidelity & Guaranty Co. v. Hall,* 237 Ky. 393; *Peterson v. Maloney,* 181 Minn. 437; *Jackson v. Bankers Indemnity Ins. Co.,* 277 Ill. App. 140.

In *Dickinson v. Maryland Cas. Co.,* 101 Conn. 369, defendant, Maryland Cas. Co., issued its policy in the usual form to one Maisano, the owner of an automobile. It contained a provision commonly known as the "omnibus coverage clause," by which the same protection was extended to any person "while riding in or legally operating the automobile described . . . provided such use or operation is with the permission of the named Assured, or, . . . with the permission of an adult member of the named Assured's household." On the evening in question Maisano's brother who was an adult member of his household, gave one Riccitelli permission to drive the car to his home for the purpose of changing his clothes, and told him to hurry back, but instead of proceeding to his home Riccitelli stopped at a place, formerly a saloon, where he met several friends, among whom was Samuel Dickinson; from there the party drove to two other former saloons in the opposite direction from Riccitelli's home and thereafter while they were returning toward Riccitelli's home the car skidded into a tree, as a result of Riccitelli's negligence, and Dickinson was killed.

Plaintiff, his administrator, recovered a judgment against Riccitelli and made demand upon the defendant, the Casualty Co., for payment. The defendant claimed it was not liable under its policy because at the time of the accident Riccitelli had deviated from the purpose for which he was permitted to use the car. The court held that defendant's position could not be maintained in the absence of an express provision in the policy; that the policy could not be narrowly construed in the Casualty Company's favor to limit its liability to such injuries only as might occur during the use of the car for the specified purpose and in the specified manner for which the permission was granted. The court there said (p. 377): "Let us see how the law construes a provision of a contract of insurance which invites two constructions. Richard on Insurance (3rd Ed.), sec. 90, thus states the accepted rule: 'The contract of insurance being a unilateral contract framed mainly in the interest of insurers, and the insured being compelled to accept the form offered, in order to secure insurance, any ambiguity as to the purpose or meaning of its terms, or what property was intended to be covered, will be construed in favor of the insured.'" The court discusses the provisions of the policy, and continuing says (p. 379): "Construing this provision in the light of these settled rules of construction, we must adopt, between the two claimed constructions, that which is most favorable to the insured, the decedent. In the presence of a reasonable doubt we must resolve it in favor of the insured. Between two interpretations, we are required by the rules of legal construction to adopt that which will sustain his claim. Applying these rules of construction, the plaintiff must prevail. But we reach the same result without the aid of the rules of construction. Let us seek the reasonable construction to put upon this language. The insurer desired to obtain insurance

and for this object it extended in its policy the benefits of the policy to the guest riding in the insured's automobile, provided the guest was riding with the permission of the insured. If the insurer had intended by this proviso to restrict the permission to its specifically named objects, it would, in each case, be necessary to make inquiry into the purpose and extent of the permission, while by specific provision the insurer could readily have done this and avoided the inquiry. The result would have been a policy less acceptable to prospective insured. It would have invited in most cases an investigation as to whether the permission granted had been violated in a particular case or not. In place of a certain provision in the policy of definite meaning, it would have inserted a provision breeding uncertainty, inviting litigation, and making the defense of a departure from the permission an available and often used defense. This is exactly what the courts and legislature have frowned upon—uncertain and ambiguous provisions in contracts of insurance under which insurers seek an escape from the obligation of paying the insurance indemnity contracted for.

"The fact that the insurer in this case did not so restrict the term 'permission' is strong evidence that it did not by this provision intend this. To justify the strict construction claimed by the insurer, the terms of the policy prepared by the defendant ought to specifically so provide. The construction claimed by the defendant would convert all cases of this character into a contest as to the exact words spoken when permission was secured, and to an attempt upon the trial to convert by refinement any use of the car into a departure sufficient to anul the permission granted. If the departure were from the place permitted, be it near or far, or from the purpose named, be it substantial or otherwise, the insured must fail in his recovery. The business of the insurance company was to sell its

insurance under this policy. Indemnity for the guest or family of the assured riding in the car was a feature of the policy. What sort of an indemnity to them would it be if they were bound by the strict limitations of the permission of the insured? . . .

(p. 381): ''Louis Maisano gave permission to Riccitelli to take the car and operate it on the streets of New Haven, in order to go to his home. It would be an unreasonable curtailment of the permission granted, to hold that any deviation or departure from the purpose indicated by Riccitelli in his request annulled the permission and put Riccitelli in the positon of one unlawfully using the car. Riccitelli undertook to take a friend in the car a mile toward his home in the northern part of the city, and another friend to his home near that of Riccitelli in the southern part of the city. These slight deviations from the route to his home, in a swiftly moving automobile, are too unimportant to have attached to them by construction the import of annulling the protective features of this insurance policy.'' In that case it was said one of the purposes of the policy was to protect a person riding in or legally operating the automobile with the permission of the assured, which is almost identical with the provision of the policy in the instant case. In that case the person operating the car was given permission to drive the car to his home and told to hurry back, but he deviated considerably from the purpose for which permission was given. But the casualty company was held liable. So, in the instant case, Weiss was given permission to drive the car to his home but he deviated considerably from the permission given him. Following the rule laid down by the Connecticut court, we think the defendant in the instant case is liable.

*Stovall v. New York Indemnity Co.*, 157 Tenn. 301, was a suit on an automobile insurance policy which provided coverage to anyone who was using the auto-

mobile "providing such use or operation is with the permission of the named Assured," and it was held that this provision was intended to exclude from protection of the policy a person who should take the automobile and use it without permission in the first instance. And it was further held that if the automobile covered by the policy were delivered for use with the permission of the assured, the person using the car subsequent to the permission would be covered by the policy regardless of whether the automobile was driven to a place or for a purpose not within the contemplation of the insured when he gave the permission. In that case a party got possession of the automobile covered by a policy for the purpose of driving persons around the city of Memphis, Tennessee. He afterward used the car for his own special purpose and drove it a considerable distance into Mississippi, where a person was injured by being struck by the automobile. The court held the Indemnity Co. liable, quoting with approval from the *Dickinson* case (101 Conn. 369). The court there said (pp. 314, 315): "It is our opinion that the words 'providing such use or operation is with the permission of the named assured' were intended to exclude from the protection of the policy a person who should take the automobile and use it without permission or authority in the first instance. If, however, the automobile covered by the policy is delivered to another for use with the permission of the owner or insured, his subsequent use of it is with the permission of the insured, within the meaning of the policy, regardless of whether the automobile is driven to a place or for a purpose not within the contemplation of the insured when he parted with possession."

In *Drewek v. Milwaukee Auto. Ins. Co.* (207 Wis. 445), it was held that the provision of an automobile insurance policy limiting coverage to the insured or

person operating the automobile with the "permission of the named assured" was intended to cover persons using the automobile with the insured's consent in the first instance regardless of the use such person thereafter made of the automobile. The court there discusses the *Dickinson* case decided by the Supreme Court of Connecticut, the *Stovall* case decided by the Supreme Court of Tennessee, and other cases, and quotes from them with approval on the question now before us.

The Supreme Court of Washington in *Odden v. Union Indemnity Co.* (156 Wash. 10), construes a provision of an automobile insurance policy substantially the same as the one in the policy before us and in the policies involved in the *Dickinson* and *Stovall* cases, and refers to those two cases with approval.

To the same effect are the holdings in the other cases above cited, which we think it is unnecessary to discuss here.

For the reasons stated the judgment of the superior court of Cook county is affirmed.

*Judgment affirmed.*

McSurely and Matchett, JJ., concur.