## SALITRERO v. MARYLAND CASUALTY CO.

No. 3626.

Court of Civil Appeals of Texas. El Paso.

Sept. 23, 1937.

Rehearing Denied Sept. 30, 1937.

R. E. Cunningham and Alex Silverman, both of El Paso, for appellant.

Kemp, Nagle & Smith, of El Paso, for appellee.

NEALON, Chief Justice.

This action was brought by appellant to recover from appellee the sum of $2,-600, which was the amount of a judgment recovered by appellant against Ward Passmore on account of personal injuries resulting from a collision between a "pick-up" truck driven by the said Passmore and an automobile driven by Ralph Gonzales, Jr., in which Antonio Salitrero, a minor, was riding. The pick-up truck belonged to L. F. Wolcott. The judgment was obtained November 6, 1935. Execution was issued, and no property of said Passmore was found subject to execution. The execution was returned unsatisfied. It was agreed that the judgment was unsatisfied, that it was valid, and at the time of trial was in full force and effect. July 1, 1934, appellee issued its policy of insurance to the said L. F. Wolcott covering liability for personal injury as defined in clause A of the insuring agreements of said policy. The limit of liability for one person was $5,000. Appellee had the required notice of the collision. It declined to defend the suit against Passmore, claiming that he was not covered by the policy. Passmore at the time was over the age of 16 years. Demand was made upon appellee for payment of the judgment, and was refused.

The policy sued on, and which was introduced in evidence, stipulated in item IV that "assured's occupation or business is farmer * * * the automobile described is and will be used for the following purposes Commercial * * * The term 'commercial,' when used, is defined as the transportation or delivery and the loading and unloading of goods or merchandise in direct connection with the assured's occupation as expressed above."

The policy further provided, in reference to coverage for bodily injuries or death, that: "The insurance granted is as follows: Clause A, against loss from liability imposed by law upon the assured for damage (direct or consequential) on account of bodily injuries, including death resulting therefrom, accidentally suffered or alleged to have been suffered by any person or persons, caused by or through the ownership, maintenance or operation of any automobile described in the schedule, and used for the purposes named therein, or by the loading or unloading of merchandise carried on any such automobile provided for the transportation of such merchandise and so specified in the schedule."

Yet another provision was: "The insurance provided by this policy is hereby made available, in the same manner and under the same conditions as it is available to the named assured, to any person operating, and/or to any other person while riding in, and/or to any person, firm or corporation legally responsible for the operation of, any of the automobiles described in the schedule, provided the use and operation thereof are lawful and with the permission of the named assured, or, if the named assured be an individual, with the permission of an adult member of the named assured's household other than a chauffeur or a domestic servant," etc. The policy contained a further provision to the effect that: "This policy does not cover: * * * (4) while the said automobile or automobiles are (a) being used for purposes other than those specified in the schedule."

By a rider attached to the policy it was provided: "33.—Farmer's or Private Estate Truck. The named insured declares, as evidenced by the acceptance of this endorsement, that the automobile described in the policy as a farm truck or as a private estate truck, is or will be used principally on or about the premises at the location stated in the policy, and in connection with the operation of the named insured's farm or private estate."

At the time Salitrero was injured Passmore was returning from a visit to Zaragosa, Mex., where he had been on a pleasure trip, and was at least partially under the influence of liquor. In fact, one witness, a deputy sheriff, testified that he was "just dead drunk." He was prosecuted for driving an automobile while intoxicated, and pleaded guilty.

Passmore had been working for Wolcott on Wolcott's ranch. The collision took place one Sunday morning. On the preceding night Passmore had agreed to return to do a little work on the tractor.

262

Wolcott let Passmore have the truck for the purpose of returning to Passmore's home and coming back to work the next morning. In going to Zaragosa, Passmore was not engaged upon any mission for Wolcott. Wolcott's home was about a mile and a half from Passmore's. Zaragosa is approximately 8 miles from Passmore's home. The collision took place on the road that connects Zaragosa with the town of Ysleta, a road that does not connect Passmore's home with Wolcott's farm. Wolcott did not give Passmore permission to take the truck to Zaragosa; his permission was limited to the use of the truck for transportation from Wolcott's farm to Passmore's home and back.

But one issue was submitted to the jury, and that was answered affirmatively. It read: "Do you find from a preponderance of the evidence that Ward Passmore had permission from L. F. Wolcott to take the truck described by the plaintiff for the purpose of going home and returning in it to the Wolcott farm next morning?"

Upon motion by appellee, judgment non obstante veredicto was entered in its favor. It is from this judgment that appellant appeals.

### Opinion.

It is the contention of appellant that as Passmore, in the first instance, secured permission from Wolcott to use the truck, that permission was broad enough to cover its use on the trip to Zaragosa. Counsel upon both sides agree that there are no reported cases from the Appellate Courts of Texas applying the so-called "Omnibus Clause" of liability insurance policies to a similar state of facts. Each litigant has called the court's attention to persuasive authority in the way of cases from the federal courts and the courts of other states.

We think the contention of appellant that liability attached is unsound for two reasons: First, the truck was not being used for commercial purposes; second, Passmore did not have the permission of Wolcott to use the truck for the trip to Zaragosa, or for any other trip than the one from Wolcott's farm to Passmore's home and back. Acting within its rights, the insurance company limited its liability by contract to occasions when the truck should be used for commercial purposes. It is not the province of the court to enlarge the obligations of that contract. Neither is it the court's function to attach to Wolcott's bailment of the truck to Passmore greater scope than was attached to it by the parties.

Our holding we think is in harmony with the decisions in this state which require one attempting to recover under the provisions of an insurance policy to bring himself within the terms of the policy. We think upon the other questions it is likewise in harmony with the trend of judicial opinion expressed in other jurisdictions, and that the cases relied upon by appellant are readily distinguishable in their facts from the instant case.

In Williams v. American Automobile Insurance Company, 44 F.(2d) 704, a case which arose in the Northern District of Texas, the United States Circuit Court of Appeals for the Fifth Circuit held that where the insurance was against loss resulting from claims for damages caused by reason of the insured's ownership or use of an automobile truck subject to the limitation that the truck should be used only for "commercial purposes," though the policy contained a clause available to any person lawfully operating the truck with the consent of the insured, one injured through the negligent operation of the truck and obtaining a judgment against its operator who had borrowed the truck for the purpose of transporting Boy Scouts to the State Fair at Dallas, could not recover as against the insurance company the amount of his unsatisfied judgment, because the truck was not being used for commercial purposes at the time the plaintiff was injured. It was being used on a pleasure trip for the accommodation of its driver and the Boy Scouts. If that court held correctly in that case, then there can be no doubt that our view is the correct one in view of the facts hereinbefore related.

That express permission to use an automobile for a given purpose does not imply permission to use it for all purposes was held by the United States Circuit Court of Appeals for the Ninth Circuit in Trotter v. Union Indemnity Company (D.C.) 33 F.(2d) 363; Id. (C.C.A.) 35 F.(2d) 104, citing Frederiksen v. Employers' etc., Co. (C.C.A.) 26 F.(2d) 76: Denny v. Royal Indemnity Co., 26 Ohio App. 566, 159 N.E. 107; Kazdan v. Stein, 26 Ohio App. 455, 160 N.E. 506; Dickinson v. Md. Cas. Co., 101 Conn. 369, 125 A. 866, 41

A.L.R. 500. In that opinion the court took notice of Stovall v. N. Y. Indemnity Co., 157 Tenn. 301, 8 S.W.(2d) 473, 72 A.L.R. 1368, and said that if the holding there made was opposed to its view, the court was unable to follow it.

Appellant calls our attention to Dickinson v. Maryland Casualty Co., 101 Conn. 369, 125 A. 866, 41 A.L.R. 500, styling it the leading case upon the proper interpretation of the term "permission" in this character of policy. That decision is not applicable to the instant case, since it does not involve the operation of the car for other than commercial purposes. However, even upon the question of permission, there is considerable difference. The driver of the car had borrowed it to go to his home in order to change his clothes. He invited the plaintiff to ride as his guest to plaintiff's home, which was in the same general direction as the driver's home. He deviated somewhat from his route, having picked up yet another person, and each of the three having regaled himself at places where liquid refreshments were served. While driving to where he would get a view of the city hall clock to see if he still had time to go home, the injuries were inflicted. It was his intention at that moment to return the car to the place from which he received it if the time would not permit the accomplishment of the purpose for which it was borrowed. The court held that the deviations from the route were slight ones and unimportant. This is quite a different case from one in which the bailee of the car drives to a resort at least five times as far from his home as was the place to which he was to return the car; a resort located in the opposite direction from his home from that in which his employer's farm was located. Even so, two of the judges of the Connecticut court held that the car was not being used with its owner's permission, that it was their opinion that the parties to the contract did not intend by the terms used that the proceeds of the policy should be exhausted in consequence of a wholly unauthorized use of the car, and stressed the fact that the car was being used for a different purpose from that for which it was to have been used, and for a purpose not consented to by the owner or his representative.

Briefly we review other cases cited by appellant.

Peterson v. Maloney (Maryland Casualty Co., garnishee), 181 Minn. 437, 232 N.W. 790, 791, cites with approval Dickinson v. Maryland Casualty Company, supra. In Peterson v. Maloney, however, the car was bailed for the personal use of the bailee; that is, that the borrower might visit his mother and his doctor. While it is true that the injury was inflicted in the middle of the night at a time when the bailee was traveling the route that he would take to the doctor's office, but when he had no intention, on account of the lateness of the hour, to visit the doctor, there was no such limitation in the grant of permission as existed in this case. It was understood that the borrower would use the car for personal purposes. Nor did the policy restrict the use of the car to commercial purposes.

In Maryland Casualty Company v. Hoge, 153 Va. 204, 149 S.E. 448, the Virginia court held that where the insured purchased the automobile for the wife's use, and she was in the habit of driving for her own pleasure, the husband's consent would be presumed. It also held that the violation of a city ordinance did not relieve the insurance company. The case has no application.

In Stovall v. N. Y. Indemnity Company, 157 Tenn. 301, 8 S.W.(2d) 473, 72 A.L.R. 1368, the Supreme Court of Tennessee held that persons injured by an employee using his employer's car for a personal pleasure trip, though expressly forbidden to use the car for pleasure purposes, could recover from the company which carried the employer's insurance; the execution having been returned nulla bona. In that case the limitation of use to commercial purposes was not present, nor was the use limited to a designated trip. The employer assumed no control over the extent of the employee's journey while the car was being used.

In Maryland Casualty Company v. Ronan (C.C.A.) 37 F.(2d) 449, 72 A.L.R. 1360, it appears that though the employee had not obtained specific permission from assured to use the car for his personal accommodation, such permission was implied by the court from the usage and common practice of the employer in permitting the employee to use the car for pleasure, to make personal visits, etc.

In Georgia Casualty Company v. Waldman (C.C.A.) 53 F.(2d) 24, 25, the claim

was made by the insurance company that permitted usage of a .corporation's automobile for pleasure and business was restricted to the corporation's business and pleasure. The car in question was being used by a stepson of the president of the corporation, a member of his family, with his permission. No question as to the president's authority to grant permission was raised. The court held against the contention of the insurance company, saying that the corporation "could have no pleasure, and applied to the corporation only that term of the contract would be meaningless." This case was decided by the Fifth Circuit Court of Appeals, which likewise decided Williams v. American Automobile Insurance Company, supra, and in nowise conflicts with the opinion in that case as to the effect of the limitation of the use to commercial purposes.

■ Appellant further assigns as error the failure and refusal of the trial court to submit an issue to the jury as to whether or not the deviation of Ward Passmore from the route to Wolcott's farm was a material or slight deviation. Appellant did not formulate such an issue. It did not expressly request it. It filed an objection to question No. 2, which objection was in the following language: "We object to the submission of Question No. 2 on the ground that it submits a proposition of law, and on the further ground that the question that should be submitted to the jury is whether or not it was a material or slight deviation and further that said question is immaterial, the law being that where the evidence shows permission to use the car that is all that is necessary, the undisputed evidence in this case showing that permission was given by L. F. Wolcott, the insured, to use the automobile truck in question."

It will be observed that the objection makes no request for the submission of the issue as to the materiality of the deviation. It in fact insists to the court that such a question is immaterial, and insists that as a matter of law the permission given in the first instance was sufficient to cover the use of the car by Passmore at the time the injuries were inflicted. From the form of the objection the court might readily infer that appellant did not desire the question of material or slight deviation submitted. The objection as to

question No. 2 was sustained. It was not submitted, and it does not appear in the transcript. The assignment is overruled.

The judgment of the district court is affirmed.

HIGGINS, J., did not sit.