### SNYDER v. ST. PAUL MERCURY IN-DEMNITY CO. OF ST. PAUL.

No. 11738.

Court of Civil Appeals of Texas. Galveston.

Nov. 15, 1945.

Rehearing Denied Dec. 6, 1945.

Allen, Smith & Neal, of Houston, **for** appellant.

Woodul, Arterbury & Folk, of Houston, for appellee.

CODY, Justice.

This is a garnishment proceeding, and is ancillary to the action in which appellant, D. A. Snyder, recovered judgment in the sum of $5,060 for personal injuries against Antonio Moncada by reason of a collision between the automobile the appellant was driving, and the truck which Moncada was driving. The collision occurred back in 1935. The truck which was driven by Moncada belonged to the Texas Prison System. It was covered by a policy of public liability insurance, issued by appellee to the Texas Prison System. Moncada was a convict, a trusty.

It is the contention of appellant that, within the terms of the policy, Moncada was an assured, even though he had deviated from the course of his employment, and was absconding with the truck at the time of the collision.

This proceeding was tried to a jury. At the conclusion of the evidence, both parties severally moved for an instructed verdict. The court granted appellee's and refused appellant's motion. And from the judgment rendered in favor of appellee this appeal is prosecuted.

Appellant predicates his appeal on these points:

I. The court erred in refusing to render judgment for appellant on his request for admissions of fact which, under the facts proven below, had become an agreed statement requiring judgment be rendered for appellant.

II. The undisputed evidence showed that Moncada gained original possession of the prison truck on the date of the accident with the permission of the officers of the Texas Prison System, he therefore became an assured within the terms of the policy which covered the truck.

III. The appellant having raised an issue of fact by his evidence upon the trial as to the genuineness of the alleged non-waiver agreement obtained by appellee from Moncada before defending for him the original suit, it was error to instruct a verdict for appellee.

### Opinion.

On May 30, 1942, which was after appellant had filed this garnishment proceed-

ing, and after appellee had filed its answer thereto, counsel for appellant, acting under Rule 169, Rules of Texas Civil Procedure, served a request for admissions of fact on counsel for appellee. Appellee's counsel receipted therefor, and the same was duly filed on June 1, 1942.

When the case was called for trial in January 1945, and it became apparent that appellant intended to contend upon the trial that the request for admissions must be taken as admitted, appellee's counsel filed a sworn motion to quash appellant's aforesaid request for admissions. The motion was presented before an announcement of ready on a trial on the merits, and upon a hearing had thereon the court overruled the motion to quash, but, under the evidence presented, extended the time prescribed by Rule 169 in which appellee might comply with the request. Thereafter, appellee either admitted or denied all matters on which admissions were so requested by appellant.

■■ For good cause shown the court may extend the time within which a request for admissions of facts, served under Rule 169, is required to be answered. Masten v. Gower, Tex.Civ.App., 165 S.W.2d 901; Gordon v. Williams, Tex.Civ.App., 164 S. W.2d 867. By granting such extension of time the court must be taken to have ruled good cause was shown therefor. The evidence adduced by appellee in support of the motion was sufficient to support the court's conclusion that appellee's counsel had reasonably been led to believe by appellant's counsel's conduct that the request for admissions had been abandoned. It was not necessary that such evidence establish such abandonment as a matter of law in order to support a finding of good cause for such extension. We overrule appellant's first point.

The omnibus clause of the policy of insurance, under which appellant urges that Moncada is an insured within the meaning of the policy, reads: "(1) The unqualified word 'Assured' wherever used * * * includes not only the Named Assured *but also any other person* or organization *while using the automobile,* including also any other person or organization legally responsible for the use thereof, *provided the disclosed and actual use of the automobile is 'Pleasure and Business' or 'Commercial',* each as defined herein, *and further provided that such use is with the permission of the Named Assured * * *."* (Emphasis supplied.)

■ It is a familiar rule that insurance contracts (the same having been drafted by the insurance company), where the meaning is doubtful or ambiguous, any doubt or ambiguity therein will be resolved in favor of the insured and against the insurer. Davis v. National Casualty Co., 142 Tex. 29, 175 S.W.2d 957. Under this rule, the Supreme Court of Connecticut, in Dickinson v. Maryland Casualty Co., 101 Conn. 369, 125 A. 866, 869, 41 A.L.R. 500, construed the meaning of the word "permission" as used in the omnibus coverage clause, which was in all material respects similar to the omnibus clause of appellee's policy, raised the question of whether, "Does this language mean the permission to use the car or the permission to use the car in a specified manner and for a specified purpose?" Then, by a divided court, it was held: "It would be an unreasonable curtailment of the permission granted to hold that any deviation or departure from the purpose indicated by Riccitelli (the bailee of the car) in his request annulled the permission and put Riccitelli in the position of one unlawfully using the car."

The Supreme Court of Tennessee, in Stovall v. New York Indemnity Co., 157 Tenn. 301, 8 S.W.2d 473, 477, 72 A.L.R. 1368, after discussing the Dickinson case, supra, held that if the automobile "is delivered to another for use, with the permission of the owner or insured, his subsequent use of it is with the permission of the insured, within the meaning of the policy, regardless of whether the automobile is driven to a place or for a purpose not within the contemplation of the insured when he parted with possession."

■ Assuming, without so holding, that the liberal construction which was applied to the meaning of "permission" as used in the omnibus clause in the Dickinson and Stovall cases, supra, was correct, we do not think those cases are in point on the facts of this case. The facts as to the "permission" under which Moncada operated the truck belonging to the State Prison System were these:

Moncada was a trusty, doing time on the Blue Ridge State Prison Farm, which is located about four miles south of where the Houston-San Antonio Highway passes through Missouri City. The Central State Prison Farm is on the Houston-San An-

tonio Highway, about eight miles west of Missouri City, in the direction of San Antonio, and away from Houston. To go from Blue Ridge to the Central Prison Farm it is necessary to pass through Missouri City and Sugarland.

On the morning of June 23, 1935, the manager of the Blue Ridge State Prison Farm signed orders for needed supplies of meat and ice from the Central State Prison Farm. An assistant steward at Blue Ridge ordered Moncada to drive the truck over to get a load of meat and a load of ice, and ordered another trusty to go along as helper. The convicts brought the meat back before noon, and went back to get the load of ice. They never returned with the truck. That afternoon the assistant steward saw it in a wrecked condition at the intersection of Fannin and Calumet in Houston, which is twelve miles east of Missouri City, with ice scattered for a block, and found the convicts held at the police station. They were drunk. They were taken back and "ranked"—put in stripes and had their heads shaved. They had simply decamped. Moncada's use of the truck, after he absconded, cannot be held to have been with the permission of the State Prison System, within the meaning of the omnibus clause. Even those jurisdictions which do not construe the clauses so liberally as it was construed in Dickinson and the Stovall cases, allow that slight deviations from permission granted by the owner do not take the bailee of the automobile out of the coverage of the policy within its meaning. But to say of the use made by Moncada of the truck by absconding with it, that such use was done within the meaning of the word "permission" as used in the insurance contract; or to say such use was a deviation embraceable within the meaning of "permission" is, we believe, to pervert the meaning of the word.

■■ The facts in this case would sustain an action against Moncada by the Prison System of the State for damages for the conversion of the truck. "To constitute a conversion of the property, however, there must be such an intention of deviation from the contract as is tantamount to an assertion of right or dominion over the property, inconsistent with the bailor's rights of ownership * * *. By the weight of authority such right or dominion is implied from the use of a hired article for a purpose other than that for which it was hired, although unauthorized use has been held not a conversion unless injury was caused thereby, or unless there was an intent to convert by such use." Quoted with approval in McElwrath v. Alexander, Tex.Civ.App., 250 S.W. 1051, 1052.

But be that as it may, under the authority of Salitrero v. Maryland, etc., Tex.Civ. App. 109 S.W.2d 260, by the El Paso Court, we hold that Moncada was not an insured within the meaning of the omnibus clause. We are aware that in that case the policy limited liability to occasions when the truck was used for "commercial purposes". But the holding there made is broad enough to state the rule covering "business and pleasure" uses.

■ On the issue of whether appellee had waived the right to deny liability by defending the main suit brought by appellant against Moncada, appellee pled that before it undertook to defend the suit it entered into a non-waiver agreement in writing with Moncada. Appellant denied such an agreement had been made, but alleged that if appellee had such an agreement it was a forgery, or had been executed without having been duly explained to Moncada, and had been procured by force and duress.

The agreement was in writing, and the signature of Moncada was witnessed by the manager of Blue Ridge Prison Farm, the hospital steward, an assistant bookkeeper, and a trusty. Governor Woodul, of the law firm representing appellee, testified by deposition that he saw Moncada execute the agreement. Appellant introduced a specimen of Moncada's signature. There was no evidence that such specimen differed from the signature to the agreement.

No error being shown the judgment should be affirmed, and it is so ordered.

Affirmed.

## On Motion for Rehearing.

We did not mean, by stating in our opinion that Moncada absconded with the truck, to be understood as saying that he stole it. The only current meanings of the word *abscond* given by the Oxford English Dictionary are: "'to hide oneself; to retire from the public view; generally used of persons in debt, or criminals eluding the law'. J; to go away hurriedly and secretly." We used the word to mean that Mon-

cada stole away in or by means of the truck, not that he stole it. We believe the evidence will bear no other construction.

Motion for rehearing refused.