EMPLOYERS MUTUAL CASUALTY
COMPANY OF DES MOINES,
Appellant,

v.

Maxine Gonzales MOSQUEDA et al.,
Appellees.

No. 19777.

United States Court of Appeals
Fifth Circuit.

May 22, 1963.

Rehearing Denied June 19, 1963.

Nelson Scurlock and Rawlings, Sayers, Scurlock & Eidson, Fort Worth, Tex., for appellant.

Charles L. Stephens, Alfred M. Clyde, Forth Worth, Tex., Clyde & Barnes, Cantey, Hanger, Johnson, Scarborough & Gooch, Fort Worth, Tex., of counsel, for appellees.

Before BROWN and BELL, Circuit Judges, and SIMPSON, District Judge.

JOHN R. BROWN, Circuit Judge.

Two questions are presented to us on this appeal from a judgment which holds that a truck driver was an assured under the omnibus clause of an insurance policy issued to his employer as the named assured. The first concerns the admission of certain evidence and the Judge's refusal to give a qualifying instruction after this evidence was received. The second concerns the sufficiency of the evidence to support the verdict and judgment entered thereon. We conclude there are no errors and accordingly affirm.

Plaintiffs, residents of Texas, brought this action in the Texas courts against Employers Mutual,[1] an Iowa corporation, to compel payment of a judgment previously rendered in the State Courts of Texas in favor of Plaintiffs and against an employee of a company which was the named assured under a policy of insurance issued by Employers Mutual. The cause after removal was tried in the United States District Court. 28 U.S.C.A. § 1441. The jury having found for the Plaintiffs, judgment was entered on their verdict, and Employers Mutual has perfected this appeal.

Initially, this suit arose out of a truck-automobile accident in which the husband and father of Plaintiffs was killed. The truck driver (Buchanan) was employed by Albright Van & Storage Company of Wichita Falls, Texas. As part of its business, it hauled telephone poles in and across the State of Texas. On the day in question, Buchanan hauled a load of poles from Wichita Falls to Springtown, Texas. There are two routes from Wichita Falls to Springtown—one is U. S. Highway 281 passing through Jacksboro, the other is U. S. Highway 287 passing through Henrietta then State Highway 148 from Henrietta to Jacksboro and from there to Springtown. Before departing on his trip, Buchanan obtained permission from the assistant truck dispatcher at Albright to stop on his way through Henrietta to deliver a birthday present to the mother of Buchanan's helper who went along on the trip. After making the stop in Henrietta, Buchanan proceeded to Jacksboro and then to Springtown and unloaded the poles. Buchanan and his helper then decided to go to Azle where they could get a beer. Azle is some 12 miles from Springtown and in the opposite direction from Jacksboro and Wichita Falls but on the highway to Fort Worth, another 13 miles beyond. As they would have to eat before going back to Wichita Falls, they decided, after having a beer in Azle, to go on into Fort Worth to eat the evening meal. This would enable them to return to Wichita Falls by another, and regular, route on U. S. 287, a major, direct highway. Having arrived on the outskirts of Fort Worth, they proceeded toward downtown. It was in this setting, on their way into the city, that the collision occurred which triggered these several suits.

Plaintiffs sued in the State Courts naming as joint defendants, Buchanan and his employer, Albright Van & Storage Company. The jury returned a verdict against both defendants. However, upon motion of Albright, the judge disregarded certain jury findings and entered j.n.o.v. for Albright. The verdict and judgment against Buchanan was appealed to the Texas Court of Civil Appeals where it was affirmed. Mosqueda v. Albright Transfer & Storage Co., Tex.Civ.App., 1958, 320 S.W.2d 867.

■ Plaintiffs being unable to recover any part of their judgment against

---

1. Employers Mutual Casualty Company of Des Moines.

Buchanan, they brought this suit against Employers Mutual claiming that Buchanan was covered under the policy it had issued to Albright. All other issues having been resolved in the previous state proceeding, the only issue [2] in the present suit was whether Buchanan was using the truck with the *permission* of the insured, Albright, within the meaning of the omnibus clause of the policy. The policy covered any person using the truck "provided the actual use of the [truck] is by the named insured or [his] spouse or with the permission of either." In his opening statement to the jury, counsel for Employers Mutual stated, "It is admitted that the defendant issued a policy of insurance on this truck * * * and it insured people who were using the truck with the permission of Albright Van & Storage Company." Thus, the entire cause was tried and submitted to the jury with "permission" being the only issue.

We think it clear that this "permission" did not have to be express permission on the part of the employer. It could be implied permission. United Services Auto Ass'n v. Russom, 5 Cir., 1957, 241 F.2d 296, 300; Maryland Casualty Co. v. Williams, 5 Cir., 1950, 184 F.2d 983; Employers Mutual Casualty Co. v. Lee, Tex.Civ.App., 1961, 352 S.W. 2d 155; Wheeler v. Pavlic, Tex.Civ.App., 1956, 290 S.W.2d 754; 7 Appleman, Insurance Law & Practice § 4365 (1962). It was thus entirely proper for the jury to consider the acts and conduct of the parties prior to the accident in determining if Albright had inferentially acquiesced in the conduct of Buchanan in driving from Springtown to Fort Worth.

Life is breathed into the trite phrase, "Actions speak louder than words," because here there was a possibility that a prior course of conduct could outweigh even an express statement by Albright that its truck drivers were told to return to home base by the most direct route.[3]

Employers Mutual asserts that the trial Judge erred in allowing the admission of certain testimony and in failing to make a qualifying charge with respect thereto. Immediately after the accident causing the death of Plaintiffs' husband and father, criminal charges of negligent homicide were instituted against Buchanan. He employed an attorney to make his bond and represent him in that action by the State. The fees of this attorney were subsequently paid by Employers Mutual. This was brought out, over the objection of Employers Mutual, in the trial below. It is now assigned as error together with the failure of the Judge to make the requested charge that such conduct on the part of the insurance company (in paying the fee) did not constitute an admission on the part of Employers Mutual and did not constitute a waiver or estoppel so as to enlarge the coverage of the policy.

We find no error here. Acts or conduct of a party, or his authorized agent, from which an inference may be drawn that the facts are not as he now claims are admissible against that party. Anything that is said or done by a party may generally be used against him as an admission, so long as it is inconsistent with contentions later advanced at the trial.[4] 2 McCormick & Ray, Texas Law

2. The state judgment held as a matter of law that Buchanan was acting outside the scope of his employment at the time of the accident so that Albright was not liable on the basis of respondeat superior. Consequently, this question was not the subject of litigation here.

3. In this connection, the Judge charged that "If the driver was acting against the positive instructions of his employer at the time of the accident, he was driving without permission, unless in spite of such instructions, permission can be implied from the course of conduct between the employer, on the one hand, and the particular employee in question and other employees similarly situated, on the other hand."

4. Admissions thus defined "are admissible into evidence provided they are relevant and material to the issue and bear some reasonable relation thereto in point of

of Evidence § 1148 (1956); 24 Tex. Jur.2d §§ 613, 623. "It need not have been, as is so often said, an admission against interest, nor is there a need to lay a predicate for its use." Cox v. Esso Shipping Co., 5 Cir., 1957, 247 F.2d 629, 632. While it is true that the fact that Employers Mutual paid Buchanan's attorney fee, standing alone, might not support the claim of Plaintiffs, it is equally true that this was evidence which the jury was entitled to consider. As the jury was entitled to consider this evidence, the giving of the requested qualifying instruction would have destroyed its usefulness. It showed that at least at one time, an agent of Employers Mutual having a responsibility for handling claims against the company considered that Buchanan was covered under the terms of the policy. Since this depended on his having driven the truck to Fort Worth with Albright's "permission," it was also evidence that the party—the defendant insurer—considered that this was the fact. As a matter of agency and evidence this was admissible. Compagnie DeNavigation Fraissinet & Cyprien Fabre, S. A. v. Mondial United Corp., 5 Cir., 1963, 316 F.2d 163; McCormick, Evidence § 244 (1954).

■■■■ The second, and all inclusive, question here is the sufficiency of the evidence to support the verdict. This basic point was adequately preserved by motions for instructed verdict and for j.n.o.v., F.R.Civ.P. 50, all of which were overruled by the trial Court. Viewed in the light most favorable to the verdict, and hence the plaintiffs, Standard Oil Co. v. Foster, 5 Cir., 1960, 280 F.2d 912, the evidence adduced here was sufficient to take Plaintiffs' case to the jury. When plaintiffs have put on the scales evidence of sufficient quality and quantity to tip the balance in favor of jury submission, it is not then the Court's function to sift, measure and weigh the defendant's counter-weight to determine

which is the heavier. Williams v. National Surety Corp., 5 Cir., 1958, 257 F.2d 771. This is the function of the jury. Although the facts be undisputed, if reasonable minds could draw different conclusions from them, then the case is one for jury submission. United States v. Fewell, 5 Cir., 1958, 255 F.2d 496. The trial Judge would have been unwarranted (as are we) in holding as a matter of law that Buchanan did not have the "permission" of Albright for the homeward journey to travel from Springtown into Fort Worth and return to Wichita Falls by a route different from that used on the outbound leg.

■■■ The evidence showed that Albright allowed considerable latitude to his drivers in their use of the trucks. For example, Albright let his truck drivers take the vehicles home with them at night when they returned from a trip after Albright's warehouse was closed. Likewise, the evidence showed that Albright did not assign specific routes for his drivers to follow in making their trips, although they were generally instructed to take the most direct route. The evidence revealed that Albright expected his drivers to eat while on the road and often advanced money for these incidental expenses. Moreover, the employer knew that the drivers did not always eat at the nearest and most convenient eating place. In addition and of great importance, the evidence includes as an exhibit, the "Driver's Daily Log" which Buchanan had filled out for the day in question. This log is required for interstate trips or as to drivers who will, within a specified critical period, be driving in interstate commerce. 49 U.S.C.A. § 301 et seq.; 49 C.F.R. §§ 195.8, 301. Moreover, as a part of Albright's system, in its final processing, the log was reviewed sufficiently to make it in effect an adoptive admission. McCormick, Evidence § 246 (1954). The log as filled out by Buchanan showed that Wichita Falls, Texas was the "Starting point

time. Admissions are merely some evidence, and the weight thereof is a matter

for the trier of fact." Note, 39 Texas L. Rev. 516 (1961).

or place" and that Fort Worth, Texas was the "Destination or turn around point or place." By its peculiar structure, the log also showed that for all of these important periods, Buchanan was "On Duty" and "Driving." [5]

The sum of this evidence was that drivers for Albright could exercise a great amount of discretion in the use and handling of the trucks in performing their assigned tasks. These practices were all with the knowledge and consent of Albright. Certainly it was enough upon which the jury could find "permission."

Employers Mutual asserts here that Texas follows the "minor deviation" rule in construing omnibus clauses. Olgin v. Employers Mutual Casualty Co., Tex. Civ.App., 1950, 228 S.W.2d 552, error ref'd, n.r.e.; Snyder v. St. Paul Mercury Indemnity Co., Tex.Civ.App., 1945, 191 S.W.2d 107, error ref'd w.m.; Salitrero v. Maryland Casualty Co., Tex.Civ.App., 1937, 109 S.W.2d 260, error ref'd. Thus, if there is any material, even though minor, deviation from the use for which the vehicle is authorized, the driver is not covered under the omnibus clause of the policy. Further, its argument continues, this must be determined as a matter of law since the fact that the state courts had previously held that Buchanan's trip to Fort Worth was outside the scope of his employment precludes any real issue on whether this trip was made with the "permission" of Albright. Consequently, it asserts that it was error for the trial Court to submit the question of whether or not this was a material deviation. Its attack is basic since it did not object to the form of the charge [6] or make any contention that the Judge had incorrectly instructed the jury on the Texas law. Its only contention is that the undisputed evidence showed as a matter of law that the deviation was material.

While we may agree, as Employers Mutual contends, that under Texas law a material deviation from the authorized use of the vehicle destroys a prior "permission," there are several things which make this seldom a pure question of law. The fact that Texas recognizes that the deviation must be "material" shows that not every departure from the straight and narrow is fatal. Certainly a factor for jury consideration is the practice, whether loose or strict, followed by the particular truck owner. Another would be the relative advantages of a longer, but perhaps better, route against a shorter one. Hence, if it was reasonably within the "permission" for the driver to go to Azle for a beer or some other personal reason, the jury might well conclude that one in Azle would find return to Wichita Falls via Fort Worth and U. S. Highway 287 preferable. In the final analysis, unless the matter is clear cut, when dealing with an elastic element of "material" deviation, the question of whether the truck was being permissively used at the time of the accident is one for the jury. Maryland Casualty Co. v. Williams, 5 Cir., 1950, 184 F.2d 983. In view of all the evidence in this case and the inferences to be drawn therefrom, the issue here could not have properly been decided as a matter of law. It was within the dominion of the jury. The jury having returned its verdict, that verdict must stand. There it ends.

Affirmed.

---

5. Although we need not say this was conclusive proof that Buchanan had Albright's permission to travel to Fort Worth, certainly it was admissible to give added weight to Plaintiffs' theory.

6. The Court charged that "not every deviation or departure from the purpose, place, distance, and time, or a combination of them, will operate to annul or destroy the permission which the user of a vehicle originally had from its owner. If the deviation is material, such original permission is destroyed; if immaterial, it is not. The question of materiality must be determined from all the circumstances relating to the entire course of conduct of the parties as it related to the handling of the truck in question or of trucks and employees similarly situated."